IN THE COURT OF COMMON PLEAS OF CAMBRIA COUNTY, PENNSYLVANIA

JENNIFER PETAK,

      Plaintiff,

vs.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

      Defendant.

CIVIL DIVISION

No. *2018 - 414*

**COMPLAINT IN A CIVIL ACTION**

Filed on behalf of Plaintiff:
Jennifer Petak

Counsel of Record for This Party:

JASON M. LICHTENSTEIN, ESQUIRE
E-mail address: jlichtenstein@edgarsnyder.com
PA I.D. No. 73288

BRAD D. TRUST, ESQUIRE
E-mail address: btrust@edgarsnyder.com
PA I.D. No. 83748

Firm No. 1605

EDGAR SNYDER & ASSOCIATES, LLC
U.S. Steel Tower, 10th Floor
600 Grant Street
Pittsburgh, PA  15219
(412) 394-1000

**JURY TRIAL DEMANDED**



#2124260

IN THE COURT OF COMMON PLEAS OF CAMBRIA COUNTY, PENNSYLVANIA



JENNIFER PETAK,                              )     CIVIL DIVISION
                                             )
            Plaintiff,                        )     No. 2018 - 919
vs.                                          )
                                             )
STATE FARM MUTUAL AUTOMOBILE                 )
INSURANCE COMPANY,                           )
                                             )
            Defendant.                        )
                                             )
                                             )

## NOTICE TO DEFEND

    You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

    **YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER [OR CANNOT AFFORD ONE], GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW [TO FIND OUT WHERE YOU CAN GET LEGAL HELP]. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.**

    **IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.**

LAWYER REFERRAL SERVICE    -    Pennsylvania Lawyer Referral Service
                                100 South Street
                                P.O. Box 186
                                Harrisburg, PA 15401

                                Telephone: 800-692-7375

#2124260

IN THE COURT OF COMMON PLEAS OF CAMBRIA COUNTY, PENNSYLVANIA

JENNIFER PETAK,                                       )   CIVIL DIVISION
                                                      )
              Plaintiff,                              )   No. 2018-919
                                                      )
vs.                                                   )
                                                      )
STATE FARM MUTUAL AUTOMOBILE                          )
INSURANCE COMPANY,                                    )
                                                      )
              Defendant.                              )
                                                      )

## COMPLAINT IN A CIVIL ACTION

AND NOW, comes the Plaintiff, Jennifer Petak, by and through her attorneys, Edgar Snyder & Associates, LLC; Jason M. Lichtenstein, Esquire; and Brad D. Trust, Esquire, and files the within Complaint in a Civil Action, alleging the following in support thereof:

1.   Plaintiff, Jennifer Petak, is an adult individual who currently resides at 114 Frost Street, Ebensburg, Cambria County, Pennsylvania 15931.

2.   At all times relevant hereto, Defendant, State Farm Mutual Automobile Insurance Company (hereinafter referred to as "State Farm") had a principal place of business located at 1 State Farm Plaza, Bloomington, IL 61710.

3.   At all times material, State Farm regularly engaged in business, including writing and issuing automobile liability and underinsured motorist insurance, in Cambria County, Pennsylvania.

4.   The motor vehicle accident hereinafter complaint of occurred on or about February 16, 2015, at and/or near the intersection of Mini Mall Road and New Germany Road in Cambria Township, Cambria County, Pennsylvania.

5.   At the aforesaid time and place, Plaintiff was operating her vehicle in an easterly direction on Mini Mall Road and was stopped at a stop sign.

#2124260

6. At the same time and place, Sonya Alexander (hereinafter referred to as "tortfeasor") was operating her motor vehicle in a southerly direction on New Germany Road towards its intersection with Mini Mall Road and attempted to turn onto Mini Mall Road.

7. When operating her vehicle as aforesaid, the tortfeasor struck Plaintiff's vehicle, thereby injuring Plaintiff.

8. The aforesaid accident and injuries to Plaintiff were a direct and proximate result of the negligence and carelessness of the tortfeasor, generally and in the following particulars:

    a. In failing to keep her vehicle on the southbound lane of New Germany Road;

    b. In failing to operate her vehicle on the travel lanes of the roadways;

    c. In turning into Plaintiff's vehicle;

    d. In entering Plaintiff's travel lane;

    e. In failing to make a proper and safe turn;

    f. In failing to keep her vehicle under proper control;

    g. In failing to promptly and properly apply the brakes;

    h. In failing to bring her vehicle to a stop before striking Plaintiff's vehicle;

    i. In failing to stop at a point nearest to Foothills Drive to ensure she had a clear view of approaching traffic;

    j. In operating her vehicle while distracted;

    k. In driving at an excessive speed given the traffic, weather conditions, road conditions and/or other circumstances then and there existing;

    l. In driving too fast for conditions;

    m. In failing to observe Plaintiff;

    n. In failing to adequately, properly, timely, continually and/or repeatedly check for vehicles on Mini Mall Road;

    o. In failing to keep a safe, careful and adequate lookout for vehicles on Mini Mall Road;

#2124260

p. In failing to ensure that it was safe and the intersection was clear prior to turning;

q. In operating her vehicle in a direction toward Plaintiff's vehicle when she knew or should have known that to do so would result in a collision;

r. In failing to honk, warn, signal, flash her lights or in any other way warn Plaintiff of the impending collision and/or of her intention to turn and to enter Mini Mall Drive;

s. In failing to inspect, repair, service and/or otherwise maintain the vehicle in a safe and proper working condition, such as her failure to do resulted in the vehicle being hazardous and unsafe;

t. In operating her vehicle in such mental and/or physical condition that it was unsafe to do so;

u. In taking a shortcut and/or in being in a hurry;

v. In failing to take cognizance of the traffic, road and/or weather conditions then and there existing;

w. In failing to stop or turn aside the vehicle or take any other action to avoid entering Plaintiff's travel lane and/or striking Plaintiff's vehicle;

x. In operating the vehicle without proper qualifications;

y. In obstructing Plaintiff's right-of-way in a lane of traffic;

z. In violating the following provisions of the Pennsylvania Motor Vehicle Code, 75 Pa.C.S. §§ 3314, 3316, 3361, 3714, and 3736.

9. As a direct and proximate result of the above-described negligence and/or carelessness of the tortfeasor, Plaintiff sustained the following injuries and damages:

a. Left shoulder full thickness rotator cuff tear requiring surgery;

b. Left shoulder impingement;

c. Left shoulder labral tear;

d. Left shoulder pain;

e. Surgical scarring about the left shoulder;

f. Decreased range of motion, strength and function of the left shoulder;

g. Shock, strain, or sprain of the muscles, ligaments, tendons, nerves, tissues, and vessels of the musculoskeletal and nervous systems and, particularly, of the left upper extremity; and

h. Other severe and permanent injuries, the exact nature of which is unknown to Plaintiff at this time.

10.     As a further result of the tortfeasor's conduct, Plaintiff has been and will be obliged to receive and undergo medical attention and care and has had to expend various sums of money and incur various expenses, which expenses have or may exceed the sums recoverable under the limits in 75 Pa. C.S.A. §1711, §1712 and/or §1715 and may be obliged to expend such sums or incur such expenditures for an indefinite of time into the future.

11.     As a further result of the tortfeasor's conduct, Plaintiff sustained cosmetic disfigurement which is permanent.

12.     As a further result of the tortfeasor's conduct, Plaintiff has suffered physical pain, humiliation, embarrassment, loss of enjoyment of life, loss of vitality, vigor, health and/or strength and may continue to suffer the same for an indefinite time into the future.

13.     As a further result of the tortfeasor's conduct, Plaintiff has suffered a loss of earnings and/or an impairment of earning capacity and power which is or may be permanent.

14.     At the time of the collision, the vehicle operated by the tortfeasor was insured by Allstate Insurance Company with bodily injury liability protection limits in the amount of Twenty Five Thousand Dollars ($25,000.00) per person.

15.     At the time of the accident, the tortfeasor had no other automobile insurance coverage.

16.     Allstate Insurance Company offered the underlying liability limits of Twenty Five Thousand Dollars ($25,000.00).

17.     State Farm provided consent to the settlement for said Twenty Five Thousand Dollars ($25,000.00) limits.

#2124260

18.  With State Farm's consent, the tortfeasor's policy limits of $25,000.00 were paid to Plaintiff.

19.  The tortfeasor's bodily injury policy limits are not adequate to compensate the Plaintiff for the injuries and damages that she sustained as a result of the subject incident.

## COUNT I - BREACH OF CONTRACT

## JENNIFER PETAK V. STATE FARM

20.  The averments contained in Paragraphs 1 through 19 of Plaintiff's Complaint in a Civil Action are incorporated herein by reference as though more fully set forth at length.

21.  At the time of the accident, Plaintiff's vehicle which was involved in the collision was insured by State Farm with Plaintiff listed as the first named insured, under a single policy of insurance bearing the policy number 017 2502-E02-38E (hereinafter referred to as "the subject policy"). A true and correct copy of the documents that State Farm has represented to Plaintiff to constitute the terms of the policy with all endorsements and letter confirming coverage are attached hereto collectively as Exhibit "1."

22.  The *Underinsured Motor Vehicle Coverages, Additional Definitions – Coverages W and W3* section of the State Farm policy provides, in pertinent part:

> "Insured means:
>
> 1.  you." *Subject policy, pg. 23.*

23.  The section of the State Farm policy entitled, *Underinsured Motor Vehicle Coverages*, provides:

> "We will pay compensatory damages for bodily injury an insured is legally entitled to recover from the owner or driver of an underinsured motor vehicle. The bodily injury must be:
>
> 1.  sustained by an insured; and

2. caused by an accident that involves the ownership, maintenance, or use of an underinsured motor vehicle as a motor vehicle." *Subject policy, pg. 24.*

24. Pursuant to the Underinsured Motorist provisions of the State Farm policy, "underinsured motor vehicle" is defined as:

Underinsured Motor Vehicle means a land motor vehicle:

1. the ownership, maintenance, and use of which is either:

   a. insured or bonded for bodily injury liability at the time of the accident; or

   b. self-insured under any motor vehicle financial responsibility law, any motor carrier law, or any similar law; and

2. for which the total limits of insurance and self-insurance for bodily injury liability from all sources:

   a. are less than the amount of the insured's damages; or

   b. have been reduced by payments to persons other than you and resident relatives to less than the amount of the insured's damages. *Subject policy, pg. 23.*

25. Under the terms of the State Farm policy, Plaintiff, as a named insured, is covered by and entitled to underinsured motorist benefits.

26. The State Farm policy provided Underinsured Motorist benefits in an amount of One Hundred Thousand Dollars ($100,000.00) per person and Three Hundred Thousand Dollars ($300,000.00) per occurrence.

27. Plaintiff presented an underinsured motorist claim to State Farm.

28. During the course of the underinsured motorist claim, State Farm requested a demand from Plaintiff.

29. On May 23, 2017, Plaintiff, acting through counsel, submitted a demand via first-class U.S. mail for State Farm to tender an offer of the total available per person Underinsured Motorist limits of One Hundred Thousand Dollars ($100,000.00).

#2124260

30. Plaintiff's demand package was comprehensive addressing the liability of the tortfeasor in the underlying motor vehicle accident, Plaintiff's injuries, and Plaintiff's economic and non-economic damages. The demand package also included supporting documentation in the form of medical records, medical billing, narrative report of the Plaintiff's orthopedic specialist, the lien information asserted by the Pennsylvania Department of Health and Human Services, and wage loss information.

31. On August 9, 2017, Plaintiff voluntarily provided Defendant, State Farm, with a Statement Under Oath.

32. As of the date of the filing of the within Complaint, Defendant, State Farm has failed and refused to extend any offer of settlement.

33. Plaintiff, Jennifer Petak, is an insured under the subject State Farm policy as defined by the policy's Underinsured Motorist provisions previously cited in this complaint.

34. Therefore, Plaintiff is legally entitled to present an Underinsured Motorist claim against the State Farm policy.

35. At all times material hereto Plaintiff has fully and completely complied with all terms, conditions and duties required under the State Farm policy.

36. The State Farm policy provides that Defendant, State Farm, will pay compensatory damages for bodily injury of an insured which the insured is legally entitled to recover from the owner or driver of an underinsured motor vehicle, as stated in the policy's Underinsured Motorist provisions previously cited in this complaint.

37. The vehicle operated by the tortfeasor is an underinsured motor vehicle as defined by the State Farm policy in that the sum of all applicable limits of the bodily injury liability insurance is less than the amount of Plaintiff's damages.

#2124260

38.     Plaintiff's damages as a result of this incident exceed the limits of all available coverage from the underinsured owner and driver, that being Twenty Five Thousand Dollars ($25,000.00) per person.

39.     Defendant, State Farm, is liable to Plaintiff for all damages sustained which are in excess of the liability limits of the tortfeasor's vehicle.

40.     Defendant, State Farm, has failed to promptly, objectively and fairly evaluate Plaintiff's Underinsured Motorist claim.

41.     Defendant, State Farm, has failed to properly offer payment to Plaintiff of the reasonable and fair value of Plaintiff's Underinsured Motorist claim.

42.     Defendant, State Farm, has failed to reasonably investigate Plaintiff's claim in as much as a thorough and proper inquiry would have revealed that Plaintiff, Jennifer Petak, sustained serious and permanent injuries, including ongoing pain and limitations due to the injuries sustained in the accident and subsequent treatment.

43.     As an insured under her policy of insurance, Plaintiff, Jennifer Petak, is owed by Defendant, State Farm, a contractual obligation to promptly investigate, evaluate and negotiate the Underinsured Motorist claim in good faith and to arrive to a prompt, fair and equitable settlement.

44.     For the reasons set forth above, Defendant, State Farm, has violated and breached its contractual obligations under the policy of insurance to its insured.

45.     Plaintiff, Jennifer Petak, claims and is entitled to receive and recover any and all compensatory damages allowed under Pennsylvania law to fully and fairly compensate her as a result of all injuries and damages sustained by her as a result of the negligence and careless actions of the tortfeasor, including but not limited to, all damages as set forth under Paragraphs 7 through 9 of this Complaint.

#2124260

WHEREFORE, Plaintiff, Jennifer Petak, respectfully requests that this Honorable Court enter judgment in her favor and against the Defendant, State Farm Mutual Automobile Insurance Company, in an amount in excess of the mandatory Arbitration Limits of Cambria County for compensatory damages, as well as interest, costs of the suit, and any other such relief as this Honorable Court deems just and proper.

**JURY TRIAL IS DEMANDED.**

## COUNT II

### BAD FAITH

### JENNIFER PETAK V. STATE FARM MUTUAL

### AUTOMOBILE INSURANCE COMPANY

46.     The averments contained in Paragraphs 1 through 45 of Plaintiff's Complaint in a Civil Action are incorporated herein by reference as though more fully set forth at length.

47.     Upon information and belief, upon receipt of the May 23, 2017 demand package, Defendant, State Farm, knew the tortfeasor's liability limit and further knew that it was insufficient to compensate Plaintiff for her injuries and damages.

48.     Upon information and belief, Defendant, State Farm, did not have a reasonable basis for refusing to pay underinsured motorist coverage benefits to the Plaintiff, because, upon information and belief, it knew that the tortfeasor's liability limit was insufficient to compensate the Plaintiff for her injuries and damages.

49.     Upon information and belief, Defendant, State Farm's, refusal to offer any underinsured motorist coverage benefits to the Plaintiff when it knew that said benefits were due and owing constitutes a frivolous and unfounded abuse of power.

#2124260

50.    Upon information and belief, Defendant, State Farm knew and/or recklessly disregarded its lack of a reasonable basis in denying Plaintiff's claim for underinsured motorist coverage.

51.    Upon information and belief, Defendant, State Farm, put its own financial interest above those of the Plaintiff in refusing to tender an offer of underinsured motorist coverage benefits when it knew that the value of Plaintiff's claim exceeded the tortfeasor's liability limit.

52.    Further, the actions of Defendant, State Farm, in the handling of Plaintiff's Underinsured Motorist claim constitute Bad Faith claims handling as defined under 42 Pa.C.S.A. §8371 as follows:

a.    In failing to promptly, objectively and fairly evaluate Plaintiff's Underinsured Motorist claim;

b.    In failing to adopt and/or implement reasonable standards in evaluating Plaintiff's claim;

c.    In acting unreasonably and unfairly in response to Plaintiff's Underinsured Motorist demand and claim;

d.    In failing to act in good faith to effectuate a fair, prompt and equitable settlement of Plaintiff's Underinsured Motorist claim in which State Farm's liability under the policy is clear;

e.    In subordinating the interests of its insured and those entitled to its insured's coverage to its own financial monetary interest;

f.    In failing to promptly offer a reasonable Underinsured Motorist payment to the Plaintiff;

g.    In failing to objectively and fairly evaluate Plaintiff's Underinsured Motorist claim and extend a fair and reasonable settlement offer;

h.    In violating its contractual and statutory duties and obligations to its insured to fairly and objectively evaluate and settle an Underinsured Motorist claim;

i.    In failing to promptly, reasonably and adequately investigate Plaintiff's claim;

j.    In failing to promptly, reasonably, objectively and adequately evaluate and/or review the medical documentation in State Farm's possession;

k.   In violating its fiduciary and statutory duty owed to an insured under the policy, specifically Plaintiff, Jennifer Petak;

l.   In acting unreasonably and unfairly by withholding Underinsured Motorist benefits justly due and owing to the Plaintiff, Jennifer Petak;

m.   In failing to make an honest, intelligent and objective settlement offer; and,

n.   In causing Plaintiff, Jennifer Petak, to expend monies, including litigation costs and expenses, to pursue her claim.

53.   An insurer such as Defendant, State Farm, has fiduciary, contractual and statutory obligations to those such as the Plaintiff, Jennifer Petak.

54.   At all relevant times, Plaintiff, Jennifer Petak, has fully complied with the terms and conditions of the policy in question and all conditions precedent and subsequent to her right to recover Underinsured Motorist benefits under said policy.

55.   Defendant, State Farm, has engaged in wanton and reckless conduct with regard to the welfare, interest and rights of its insured, the Plaintiff, Jennifer Petak, and is liable for its Bad Faith conduct.

56.   For the reasons set forth above, the Defendant, State Farm, has violated the subject policies of insurance, its obligations as an insurer, has failed to act in good faith towards the Plaintiff, Jennifer Petak, and has violated 42 Pa.C.S. §8371, for which the Defendant, State Farm, is liable for compensatory and punitive damages, together with interest, attorney's fees, costs and any such other relief as the Court deems appropriate.

WHEREFORE, Plaintiff, Jennifer Petak, demands judgment in her favor and against Defendant, State Farm Mutual Automobile Insurance Company, in an amount in excess of the mandatory Arbitration Limits of Cambria County for compensatory damages, punitive damages, interest, costs of suit, attorney's fees and any other damages allowed by 42 Pa. C.S. §8371, as well as any such other relief that the Court may deem appropriate.

#2124260

**JURY TRIAL IS DEMANDED.**

EDGAR SNYDER & ASSOCIATES LLC

By: _____
      Brad D. Trust, Esquire
      Attorneys for Plaintiff

#2124260

## **VERIFICATION**

I, Jennifer Petak, Plaintiff herein, hereby verify that the averments of fact contained in the foregoing Complaint are true and correct and based upon my personal knowledge, information or belief. I understand that these averments of fact are made subject to the penalties of 18 Purdons Consolidated Statutes Section 4904, relating to unsworn falsification to authorities.

Date: 12.15.17

Jennifer Petak

## CERTIFICATE OF COMPLIANCE

I certify that this filing complies with the provisions of the *Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts* that require filing confidential information and documents differently than non-confidential information and documents.

Submitted by:

EDGAR SNYDER & ASSOCIATES, LLC

Brad D. Trust, Esquire
Attorney No.: 83748

*Providing Insurance and Financial Services*
*Home Office, Bloomington, IL*

 **StateFarm**

January 18, 2016

Kevin Peck, Esquire
Edgar Snyder & Associates
600 Grant St FL 10
Pittsburgh PA 15219-2807

**State Farm Claims**
PO Box 106171
Atlanta GA 30348-6171

RE:   Claim Number:       38-603V-839
      Date of Loss:       February 16, 2015
      Our Insured:        Jennifer Petak
      Your Client(s):     Jennifer Petak

Dear Mr. Peck:

Enclosed please find a certified copy of the policy in force at the time of this loss.

Please be advised that State Farm has elected to amend this policy with respect to the applicable policy limits of the Underinsured Motor Vehicle Coverage to match the applicable policy limit under Liability Coverage of $100,000 per person/$300,000 per accident.

Please let me know if you have any questions.

Sincerely,

Gregory Bell
Claim Specialist
(844) 292-8615 Ext. 355
Fax:   (855) 820-6318

State Farm Mutual Automobile Insurance Company

**PLAINTIFF'S
EXHIBIT**

tabbies®

 **StateFarm·**

## Certified Policy Record

I, the undersigned, do hereby confirm that I am custodian of the records pertaining to the issuance of policies by State Farm Mutual Automobile Insurance Company.

I certify that the attached documents represent a true and accurate record of the terms and conditions of Policy Number 017 2502-E02-38E including any endorsements, if applicable, for the policy term(s) 04/29/2014 to 11/02/2014 and insuring PETAK, JENNIFER of 126 SANTA FE DR, EBENSBURG PA 15931-1857 based on available records.

The following endorsements are included:
6091iJ, 6126LN, 6938A.1

It is State Farm's business practice to print a new Declarations Page only when a policy issuance transaction such as a change of coverage occurs. Therefore, the included Declarations Page which was in effect at the time of loss will indicate the policy period of the last policy issuance transaction.

The policy was in effect on the loss date of 02/16/2015.

Robert V. Crisanti
Underwriting Team Manager
Date: _____

State of Pennsylvania
County of Delaware

Subscribed and sworn to before me this ___ day of _January_, 20 _16_.

Kathryn Marie Kelly
Notary Public

My Commission Expires: _4/6/2019_

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
Kathryn Marie Kelly, Notary Public
Concord Twp., Delaware County
My Commission Expires April 6, 2019
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES

C.A.R. CODE 94



STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY    STATE FARM FIRE AND CASUALTY COMPANY

009  A

Applicant/Insured Name *Adams, Charles J. + Jennifer*   Policy Number *id3-2055-E02-38C*

Date *9-19-95*    Agent's Code *3336*

I understand that this acknowledgment of coverage selection shall be applicable, as of the date specified above, to the policy of insurance identified above, on all replacement policies and on all renewals of either this policy or any replacement policy, unless I request in writing a different selection for such coverage.

THE LAWS OF THE COMMONWEALTH OF PENNSYLVANIA, AS ENACTED BY THE GENERAL ASSEMBLY, ONLY REQUIRE THAT YOU PURCHASE LIABILITY AND FIRST-PARTY MEDICAL BENEFIT COVERAGES. ANY ADDITIONAL COVERAGES OR COVERAGES IN EXCESS OF THE LIMITS REQUIRED BY LAW ARE PROVIDED ONLY AT YOUR REQUEST AS ENHANCEMENTS TO BASIC COVERAGES.

### IMPORTANT NOTICE

Insurance companies operating in the Commonwealth of Pennsylvania are required by law to make available for purchase the following benefits for you, your spouse or other relatives or minors in your custody or in the custody of your relatives, residing in your household, occupants of your motor vehicle or persons struck by your motor vehicle:

(1)  Medical benefits, up to at least $100,000.

(1.1) Extraordinary medical benefits, from $100,000 to $1,100,000 which may be offered in increments of $100,000.

(2)  Income loss benefits, up to at least $2,500 per month up to a maximum benefit of at least $50,000.

(3)  Accidental death benefits, up to at least $25,000.

(4)  Funeral benefits, $2,500.

(5)  As an alternative to paragraphs (1), (2), (3) and (4), a combination benefit, up to at least $177,500 of benefits in the aggregate or benefits payable up to three years from the date of the accident, whichever occurs first, subject to a limit on accidental death benefit of up to $25,000 and a limit on funeral benefit of $2,500, provided that nothing contained in this subsection shall be construed to limit, reduce, modify or change the provisions of section 1715(d) (relating to availability of adequate limits).

(6)  Uninsured, underinsured and bodily injury liability coverage up to at least $100,000 because of injury to one person in any one accident and up to at least $300,000 because of injury to two or more persons in any one accident or, at the option of the insurer, up to at least $300,000 in a single limit for these coverages, except for policies issued under the Assigned Risk Plan. Also, at least $5,000 for damage to property of others in any one accident.

Additionally, insurers may offer higher benefit levels than those enumerated above as well as additional benefits. However, an insured may elect to purchase lower benefit levels than those enumerated above.

Your signature on this notice or your payment of any renewal premium evidences your actual knowledge and understanding of the availability of these benefits and limits as well as the benefits and limits you have selected.

If you have any questions or you do not understand all of the various options available to you, contact your agent or company.

If you do not understand any of the provisions contained in this notice, contact your agent or company before you sign.

Signature of an Applicant or an insured *Charles J. Adams*   Date *9-19-95*

150-4186 PAF  05-94  Printed in U.S.A.

C.A.R. CODE 91

009 A

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY**          **STATE FARM FIRE AND CASUALTY COMPANY**

Applicant/Insured Name _Adams, Charles J + Jennifer_  Policy Number _663-7055-E02-38C_

Date _9-19-95_     Agent's Code _3336_

I understand that this acknowledgment of coverage selection shall be applicable, as of the date specified above, to the policy of insurance identified above, on all replacement policies and on all renewals of either this policy or any replacement policy, unless I request in writing a different selection for such coverage.

## TORT OPTIONS

**NOTICE TO NAMED INSUREDS**

A. "Limited Tort" Option - The laws of the Commonwealth of Pennsylvania give you the right to choose a form of insurance that limits your right and the right of members of your household to seek financial compensation for injuries caused by other drivers. Under this form of insurance, you and other household members covered under this policy may seek recovery for all medical and other out-of-pocket expenses, but not for pain and suffering or other nonmonetary damages unless the injuries suffered fall within the definition of "serious injury" as set forth in the policy, or unless one of several other exceptions noted in the policy applies.

B. I wish to choose the "limited tort" option described in paragraph A:

_____          _____
Signature of a Named Insured                                            Date

C. "Full Tort" Option - The laws of the Commonwealth of Pennsylvania also give you the right to choose a form of insurance under which you maintain an unrestricted right for you and the members of your household to seek financial compensation for injuries caused by other drivers. Under this form of insurance, you and other household members covered under this policy may seek recovery for all medical and other out-of-pocket expenses and may also seek financial compensation for pain and suffering and other nonmonetary damages as a result of injuries caused by other drivers.

D. I wish to choose the "full tort" option described in paragraph C:

_Charles J Adams_                                          _9-19-95_
Signature of a Named Insured                                            Date

E. You may contact your insurance agent or company to discuss the cost of other coverages.

C.A.R. CODE 92

009 A

 **STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY**          **STATE FARM FIRE AND CASUALTY COMPANY**

Applicant/Insured Name *Adams, Charles J. Jennifer*   Policy Number *443-7055-E02-38C*

Date *9-19-95*   Agent's Code *333L6*

I understand that this acknowledgment of coverage selection shall be applicable, as of the date specified above, to the policy of insurance identified above, on all replacement policies and on all renewals of either this policy or any replacement policy, unless I request in writing a different selection for such coverage.

---

**PENNSYLVANIA UNINSURED MOTORIST COVERAGE**
**(Acknowledgment of Coverage Selection)**

Pennsylvania law requires that no motor vehicle liability insurance policy shall be delivered or issued for delivery unless coverage has been made available for bodily injury for persons who are legally entitled to recover damages from owners or operators of uninsured motor vehicles.

Uninsured Motor Vehicle - Coverages U and U3 are available with limits up to the Bodily Injury Liability limits. Coverage U or U3 will be written at the Bodily Injury Liability limits unless a named insured selects lower limits or rejects the coverage entirely. (Minimum limits are the financial responsibility limits for bodily injury liability.)

I acknowledge that I have been given the opportunity to purchase Uninsured Motor Vehicle Coverage limits up to my Bodily Injury Liability limits but instead:

I select Uninsured Motor Vehicle Coverage limits of $ __*25*__ /$ __*50*__ in lieu of the higher limits made available to me.
 per person        per accident

*Charles J. Adams* _____        __*9-19-95*__
Signature of a Named Insured                        Date

---

**PENNSYLVANIA UNDERINSURED MOTORIST COVERAGE**
**(Acknowledgment of Coverage Selection)**

Pennsylvania law requires that no motor vehicle liability insurance policy shall be delivered or issued for delivery unless coverage has been made available for bodily injury for persons who are legally entitled to recover damages from owners or operators of underinsured motor vehicles.

Underinsured Motor Vehicle - Coverages W and W3 are available with limits up to the Bodily Injury Liability limits. Coverage W or W3 will be written at the Bodily Injury Liability limits unless a named insured selects lower limits or rejects the coverage entirely. (Minimum limits are the financial responsibility limits for bodily injury liability.)

I acknowledge that I have been given the opportunity to purchase Underinsured Motor Vehicle Coverage limits up to my Bodily Injury Liability limits but instead:

I select Underinsured Motor Vehicle Coverage limits of $ __*25*__ /$ __*30*__ in lieu of the higher limits made available to me.
 per person        per accident

*Charles J. Adams* _____        __*9-19-95*__
Signature of a Named Insured                        Date

State Farm Mutual Automobile Insurance Company
One State Farm Dr
Concordville PA 19339

35973-1-A     MUTL  VOL

| DECLARATIONS PAGE | |
|---|---|
| NAIC# 25178 | PAGE 1 OF 2 |
| POLICY NUMBER  017 2502-E02-38E | |
| POLICY PERIOD APR 29 2014 to NOV 02 2014 12:01 A.M. Standard Time | |

NAMED INSURED
AT2                    38-6657-112A    A
            00170  0006
PETAK, JENNIFER
126 SANTA FE DR
EBENSBURG PA  15931-1857

AGENT
KIM SPRINGER
301 E HIGH ST
EBENSBURG, PA 15931-1629

PHONE:(814)472-9131

DO NOT PAY PREMIUMS SHOWN ON THIS PAGE.
IF AN AMOUNT IS DUE, THEN A SEPARATE STATEMENT IS ENCLOSED.

## YOUR CAR

| YEAR | MAKE | MODEL | BODY TYPE | VEHICLE ID NUMBER | CLASS |
|---|---|---|---|---|---|
| 2011 | JEEP | WRANGLER | SPORT WG | 1J4BA3H14BL611245 | 100H408000 |

| OPTION | COVERAGES AND | PREMIUMS |
|---|---|---|
| | Bodily Injury Limits | |
| | $100,000    $300,000 | |
| | Each Accident | |
| C2 | Medical Payments Coverage | $22.03 |
| | $5,000 | |
| G | Collision Coverage - $500 Deductible | $132.12 |
| R1 | Car Rental and Travel Expenses Coverage | $12.84 |
| | Each Day,    Each Loss | |
| U | Uninsured Motor Vehicle Coverage | $4.92 |
| | Bodily Injury Limits | |
| | $25,000    $50,000 | |
| | Each Person, Each Accident | |
| W | Underinsured Motor Vehicle Coverage | $19.47 |
| | Bodily Injury Limits | |
| | $25,000    $50,000 | |
| | Each Person, Each Accident | |
| F | Funeral Benefits Coverage | $.68 |
| | $2,500 | |
| Z1 | Loss of Income Coverage | $3.64 |

Total premium for APR 29 2014 to NOV 02 2014    $473.62*  This is not a bill.

## IMPORTANT MESSAGES

Replaced policy number 0172502-38D.

Your total renewal premium for MAY 02 2014 to NOV 02 2014 is $465.59.

* The total premium listed above reflects a recent change to your policy and the 6 month renewal premium.

CONTINUED
See Reverse Side

03858/01559

This policy is issued by State Farm Mutual Automobile Insurance Company.

## MUTUAL CONDITIONS

1. **Membership.** While this policy is in force, the first insured shown on the Declarations Page is entitled to vote at all meetings of members and to receive dividends the Board of Directors in its discretion may declare in accordance with reasonable classifications and groupings of policyholders established by such Board.

2. **No Contingent Liability.** This policy is non-assessable.

3. **Annual Meeting.** The annual meeting of the members of the company shall be held at its home office at Bloomington, Illinois, on the second Monday of June at the hour of 10:00 A.M., unless the Board of Directors shall elect to change the time and place of such meeting, in which case, but not otherwise, due notice shall be mailed each member at the address disclosed in this policy at least 10 days prior thereto.

In Witness Whereof, the State Farm Mutual Automobile Insurance Company has caused this policy to be signed by its President and Secretary at Bloomington, Illinois.

Secretary

President

THIS MESSAGE APPLIES TO CAR POLICIES:

IF YOU HAVE "COLLISION" COVERAGE ON THIS POLICY, YOU ALSO HAVE "COLLISION" COVERAGE ON ANY RENTED CAR WHILE IT IS DRIVEN BY OR IN THE CUSTODY OF AN INSURED.

PLEASE NOTE THESE LIMITATIONS AND EXCEPTIONS:

1. THIS COVERAGE APPLIES FOR NO MORE THAN 30 CONSECUTIVE DAYS BEGINNING ON THE DAY YOU BEGIN USING THE CAR.

2. THIS AUTOMATIC EXTENSION OF COVERAGE IS FOR COLLISION COVERAGE ONLY. NO OTHER CHARGES IMPOSED BY YOUR RENTAL AGREEMENT ARE COVERED.

3. THIS COVERAGE IS SECONDARY TO OTHER INSURANCE CARRIED ON A RENTED CAR AND IS SUBJECT TO ALL OTHER POLICY PROVISIONS AND APPLICABLE ENDORSEMENTS.

THIS MESSAGE APPLIES TO RECREATIONAL VEHICLE POLICIES:

ANY "PHYSICAL DAMAGE" COVERAGE THAT YOU MAY HAVE ON THIS POLICY DOES NOT APPLY TO RENTED RECREATIONAL VEHICLES.

State Farm Mutual Automobile Insurance Company

One State Farm Dr
Concordville PA 19339

35873-1-A          MUTL  VOL

**DECLARATIONS PAGE**

PAGE 2 OF 2

NAIC#   25178

NAMED INSURED

35-6657-112A   A

**POLICY NUMBER**  017 2502-E02-38E

**POLICY PERIOD** APR 29 2014 to NOV 02 2014
12:01 A.M. Standard Time

PETAK, JENNIFER
126 SANTA FE DR
EBENSBURG PA  15931-1857

**EXCEPTIONS POLICY BOOKLET & ENDORSEMENTS** (See policy booklet and individual endorsements for coverage details.)

YOUR POLICY CONSISTS OF THIS DECLARATIONS PAGE, THE POLICY BOOKLET -
FORM 9838A, AND ANY ENDORSEMENTS THAT APPLY, INCLUDING THOSE ISSUED TO YOU
WITH ANY SUBSEQUENT RENEWAL NOTICE.
CREDITOR- FIRST COMMONWEALTH BANK, ATTN INSURANCE DEPT PO BOX 400, INDIANA
PA 15701-0400
6091U     CERTIFICATE OF GUARANTEED RENEWAL.
6126LN    AMENDATORY ENDORSEMENT.
6438A.1   AMENDATORY ENDORSEMENT.
THIS POLICY PROVIDES FULL TORT OPTION.

Agent:     KIM SPRINGER

Telephone: (814)472-9131

Prepared   MAY 01 2014    6657-BF1

03559/01559

This policy is issued by State Farm Mutual Automobile Insurance Company.

## MUTUAL CONDITIONS

1. **Membership.** While this policy is in force, the first insured shown on the Declarations Page is entitled to vote at all meetings of members and to receive dividends the Board of Directors in its discretion may declare in accordance with reasonable classifications and groupings of policyholders established by such Board.

2. **No Contingent Liability.** This policy is non-assessable.

3. **Annual Meeting.** The annual meeting of the members of the company shall be held at its home office at Bloomington, Illinois, on the second Monday of June at the hour of 10:00 A.M., unless the Board of Directors shall elect to change the time and place of such meeting, in which case, but not otherwise, due notice shall be mailed each member at the address disclosed in this policy at least 10 days prior thereto.

In Witness Whereof, the State Farm Mutual Automobile Insurance Company has caused this policy to be signed by its President and Secretary at Bloomington, Illinois.

*Lynne M. Yaxell*
Secretary

*Edward B. Rust, Jr.*
President

THIS MESSAGE APPLIES TO CAR POLICIES:

IF YOU HAVE "COLLISION" COVERAGE ON THIS POLICY, YOU ALSO HAVE "COLLISION" COVERAGE ON ANY RENTED CAR WHILE IT IS DRIVEN BY OR IN THE CUSTODY OF AN INSURED.

PLEASE NOTE THESE LIMITATIONS AND EXCEPTIONS:

1. THIS COVERAGE APPLIES FOR NO MORE THAN 30 CONSECUTIVE DAYS BEGINNING ON THE DAY YOU BEGIN USING THE CAR.

2. THIS AUTOMATIC EXTENSION OF COVERAGE IS FOR COLLISION COVERAGE ONLY. NO OTHER CHARGES IMPOSED BY YOUR RENTAL AGREEMENT ARE COVERED.

3. THIS COVERAGE IS SECONDARY TO OTHER INSURANCE CARRIED ON A RENTED CAR AND IS SUBJECT TO ALL OTHER POLICY PROVISIONS AND APPLICABLE ENDORSEMENTS.

THIS MESSAGE APPLIES TO RECREATIONAL VEHICLE POLICIES:

ANY "PHYSICAL DAMAGE" COVERAGE THAT YOU MAY HAVE ON THIS POLICY DOES NOT APPLY TO RENTED RECREATIONAL VEHICLES.

## 8091U CERTIFICATE OF GUARANTEED RENEWAL

This endorsement is a part of the policy. Except for the changes it makes, all other provisions of the policy remain the same and apply to this endorsement.

This endorsement is issued by the STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY of Bloomington, Illinois.

1. *We* will not cancel or nonrenew this policy as long as:
   a. this policy insures only *private passenger cars*;
   b. premiums are paid when due;
   c. all drivers of *your car* maintain valid drivers licenses;
   d. *you* continue to reside in an area in which State Farm Mutual Automobile Insurance Company sells automobile insurance and has the Certificate of

   Guaranteed Renewal available for use; and
   e. no *person* other than *you* becomes a named insured on this policy.

2. *We* will be able to select from those coverages which continue to be available from State Farm Mutual Automobile Insurance Company.

3. Coverage will be provided by *our* Car Policy, including any revisions that may be made to it.

Page 1 of 1

6091U

Policy Number 017 2502-E02-38E   Sheet 1 of 2

PLEASE ATTACH TO YOUR POLICY BOOKLET

---

## 6126LN AMENDATORY ENDORSEMENT

This endorsement is a part of the policy. Except for the changes this endorsement makes, all other provisions of the policy remain the same and apply to this policy.

1. **THIS POLICY**

   The following is added (this replaces item 1. of endorsement 6938A.1):

   5. *Your* purchase of this policy may allow:
      a. *you* to purchase or obtain certain coverages, coverage options, coverage deductibles, coverage limits, or coverage terms on other products from the *State Farm Companies*, subject to their applicable eligibility rules; or
      b. the premium or price for other: (1) insurance; (2) financial; (3) vehicle; (4) home; (5) electronic; or (6) travel products or services purchased by *you*, including non-insurance products or services, to vary. Such other products or services must be provided by the *State Farm Companies* or by an organization that has entered into an agreement or contract, with the *State Farm Companies*. The *State Farm Companies* do not warrant the merchantability, fitness, or quality of any product or service offered or provided by that organization.

2. **LIABILITY COVERAGE**

   Insuring Agreement and Supplementary Payments are replaced by the following:

   **Insuring Agreement**

   1. *We* will pay damages an *insured* becomes legally liable to pay because of:
      a. *bodily injury* to others; and
      b. damage to property

   caused by an accident that involves a vehicle for which, that *insured* is provided Liability Coverage by this policy.

   2. *We* have the right to:
      a. investigate, negotiate, and settle any claim or lawsuit;
      b. defend an *insured* in any claim or lawsuit, with attorneys chosen by *us*; and
      c. appeal any award or legal decision for damages payable under this policy's Liability Coverage.

   **Supplementary Payments**

   *We* will pay, in addition to the damages described in the Insuring Agreement of this policy's Liability Coverage, those items listed below that result from such accident:

   1. Attorney fees for attorneys chosen by *us* to defend an *insured* who is sued for such damages. *We* have no duty to pay attorney fees incurred after we deposit in court or pay the amount due under the Insuring Agreement of this policy's Liability Coverage;

   2. Court costs awarded by the court against an *insured* and resulting from that part of the lawsuit:
      a. that seeks damages payable under this policy's Liability Coverage; and
      b. against which *we* defend an *insured* with attorneys chosen by *us*.

   *We* have no duty to pay court costs incurred after we deposit in court or pay the amount due under the Insuring Agreement of this policy's Liability Coverage;

   Page 1 of 3

   6126LN

© Copyright, State Farm Mutual Automobile Insurance Company, 2011

## 6938A.1 AMENDATORY ENDORSEMENT

This endorsement is a part of the policy. Except for the changes this endorsement makes, all other provisions of the policy remain the same and apply to this endorsement.

### 1. THIS POLICY

The following is added:

5. *Your* purchase of this policy may allow *you* to purchase certain coverages, coverage options, coverage deductibles, coverage limits, or coverage terms on other policies from the *State Farm Companies*, subject to their applicable eligibility rules.

b. *State Farm Companies* is changed to read:

*State Farm Companies* means one or more of the following:

1. State Farm Mutual Automobile Insurance Company;

2. State Farm Fire and Casualty Company; and

3. Subsidiaries or affiliates of either 1. or 2. above.

### 2. DEFINITIONS

a. *Serious injury* is changed by deleting item 1.e. and adding the following:

4. An individual otherwise bound by the limited tort election shall retain full tort rights if injured while an occupant of a private passenger motor vehicle if that vehicle is described on a policy under which full tort coverage was elected and that individual is:

a. residing in the household of any individual identified by name as an insured under that policy; and

b. either:

(1) a spouse or other relative of such individual identified by name as an insured under that policy; or

(2) a minor in the custody of either such named insured or relative of such named insured.

### 3. LIABILITY COVERAGE

Exclusions

a. Exclusion 2. is deleted.

b. The exception to exclusion 8. is changed to read:

This exclusion does not apply to:

a. *you*;

b. any *resident relative*; or

c. any agent, employee, or business partner of a, or b. above

while maintaining or using *your car*, a *newly acquired car*, a *temporary substitute car*, or a *trailer owned by you*;

c. The exception to exclusion 11. is changed to read:

This exclusion does not apply to damage to a:

a. motor vehicle *owned by the employer of you or any resident relative* if such damage is caused by an *insured* while operating another motor vehicle;

Page 1 of 2

6938A.1

©, Copyright, State Farm Mutual Automobile Insurance Company, 2008

---

3. Interest the *insured* is legally liable to pay under the provisions of the Insuring Agreement of this policy's Liability Coverage:

before a judgment, but only the interest on that part of the damage we pay; or

(1) that part of the damage we pay; or

(2) this policy's applicable Liability Coverage limit; and

b. after a judgment.

*We have no duty to pay interest that accrues after we deposit in court, pay, or offer to pay, the amount due under the Insuring Agreement of this policy's Liability Coverage. We also have no duty to pay interest that accrues on any damages paid or payable by a party other than the insured or us.*

4. Premiums for bonds, provided by a company chosen by us, required to appeal a decision in a lawsuit against an *insured*. We have no duty to:

pay for any bond with a face amount that exceeds this policy's applicable Liability Coverage limit;

furnish or apply for any bonds; or

pay premiums for bonds purchased after we deposit in court, pay, or offer to pay, the amount due under the Insuring Agreement of this policy's Liability Coverage; and

5. The following costs and expenses if related to an approved claim or lawsuit that has been filed against an *insured*:

a. Loss of wages or salary, but not other income, up to $200 for each day we asked *insured* attends, at our request: (1) an independent medical exam; or (2) a trial of a lawsuit; and

b. Reasonable expenses incurred by an *insured* at our request other than

Page 2 of 3

©, Copyright, State Farm Mutual Automobile Insurance Company, 2011

---

loss of wages, salary, or other income.

The amount of any of the costs or expenses listed above that are incurred by an *insured* must be reported to us before we will pay such insured costs or expenses.

### 3. GENERAL TERMS

a. The following is added to 2. Where Coverage Applies.

Death, Dismemberment and Loss of Sight Coverage applies worldwide.

b. The following is added (this replaces item 5.a. of endorsement 6939A.1):

Limited Coverage in Mexico

This policy does not provide Mexican auto insurance and does not comply with Mexican auto insurance requirements. If *you* or any other *insured* plan to drive in Mexico, then auto insurance providing coverage in Mexico should be purchased from a Mexican insurance company.

Subject to the above paragraph, the following coverages apply in Mexico, but only for accidents and losses that occur in Mexico within 50 miles of the United States of America border and only for the *insureds* as defined under each of the following coverages:

a. Liability Coverage

b. Medical Payments Coverage; Essential Personal Injury Protection Coverage; Medical Expense Benefits Coverage; Loss of Income Coverage; Funeral Benefits Coverage

c. Physical Damage Coverages

Any amount payable for the repair or replacement of the covered vehicle under this policy will be limited to the cost to repair or replace the covered vehicle in the United States of America.

6126LN

b. residence while rented to or leased to an insured; or

c. private garage while rented to or leased to an insured.

4. **UNINSURED MOTOR VEHICLE COVERAGES — Coverages U and U3**

**Additional Definitions — Coverages U and U3**

Item 2. under "Uninsured Motor Vehicle" is changed to read:

2. the owner and driver of which remain unknown and which causes bodily injury to the insured.

5. **GENERAL TERMS**

a. The following is added to 2. Where Coverage Applies:

Liability Coverage, Medical Payments Coverage, Extraordinary Medical Payments Coverage, Loss of Income Coverage, Funeral Benefits Coverage, and Physical Damage Coverages also apply in Mexico within 50 miles of the United States of America border. A Physical Damage Coverage loss in Mexico is determined on the basis of cost at the nearest United States of America point.

Death, Dismemberment and Loss of Sight Coverage applies anywhere in the world.

b. The following is added to 4. Changes in This Policy:

d. Change of Policy Address

We may change the named insured's policy address as shown on the Declarations Page and in our records to the most recent address provided to us by:

(1) you; or

(2) the United States Postal Service.

7. Nonrenewal

If we decide not to renew this policy:

c. 7. Nonrenewal is changed to read:

a. because a named insured's driver's license or motor vehicle registration has been under suspension or revocation during the policy period, then at least 15 days before the end of the current policy period; or

b. for any other reason, then at least 60 days before the end of the current policy period

we will mail or deliver a nonrenewal notice to the most recent policy address that we have on record for the named insured who is shown on the Declarations Page. The mailing of the notice will be sufficient proof of notice.

d. The first sentence of b. How and When We May Cancel of 8. Cancellation is changed to read:

We may cancel this policy by mailing or delivering a written notice to the most recent policy address that we have on record for the named insured who is shown on the Declarations Page.

e. Item b. of 13. Legal Action Against Us is deleted.

6938A.1

Page 2 of 2

©, Copyright, State Farm Mutual Automobile Insurance Company, 2008



Please read the policy carefully. If there is
an accident, contact your State Farm agent
or one of our Claim Offices at once. (See
"INSURED'S DUTIES" in this policy booklet.)

SPECIMEN

State Farm®
**Car Policy**
Booklet

**Pennsylvania**
**Policy Form 9838A**



# CONTENTS

THIS POLICY ............................................. 3

DEFINITIONS ............................................ 4

LIABILITY COVERAGE ........................... 7

    Additional Definition ............................. 7
    Insuring Agreement ............................... 7
    Supplementary Payments ...................... 8
    Limits ..................................................... 8
    Nonduplication ...................................... 9
    Exclusions .............................................. 9
    If Other Liability Coverage Applies .......... 10
    Required Out-of-State Liability Coverage 11
    Financial Responsibility Certification ....... 11

FIRST PARTY COVERAGES ................... 12

    Additional Definitions – Coverages C2, Z, Y, and F .......................................... 12
    MEDICAL PAYMENTS – COVERAGE C2 ......................................... 12
    Insuring Agreement – Coverage C2 .......... 12
    EXTRAORDINARY MEDICAL PAYMENTS – COVERAGE Q ............... 13
    Insuring Agreement and Limits – Coverage Q ........................................... 13
    LOSS OF INCOME – COVERAGE Z ...... 14
    Insuring Agreement – Coverage Z ........... 14
    DEATH, DISMEMBERMENT AND LOSS OF SIGHT – COVERAGE Y ................... 14
    Additional Definition – Coverage Y ........ 14
    Insuring Agreement – Coverage Y ........... 14
    Payments of Benefits – Coverage Y ......... 15
    FUNERAL BENEFITS – COVERAGE F ..................................... 15
    Insuring Agreement – Coverage F ........... 15

    Limits – Coverage C2 ............................ 15
    Limits – Coverage Z .............................. 15
    Limits – Coverage Y .............................. 15
    Limits – Coverage F .............................. 15
    Limits – Coverages C2, Q, Z, Y, and F ..... 15
    Priorities for the Payment of First Party Benefits – Coverages C2, Q, Z, Y, and F .. 15

    Exclusions – Coverages C2, Q, Z, Y, and F.... 16

Mental or Physical Examination – Coverages C2, Q, Z, Y, and F .............................. 16
COMBINED BENEFITS – COVERAGE M ............................... 17

    Insuring Agreement – Coverage M .......... 17
    Limits – Coverage M ............................ 17
    Time Limitation – Coverage M ............... 17
    Other Provisions – Coverage M ............... 17

UNINSURED MOTOR VEHICLE COVERAGES ...................................... 17

    Additional Definitions – Coverages U and U3 ............................................... 17
    Insuring Agreement – Coverages U and U3 ............................................... 18
    Consent to Settlement – Coverages U and U3 ............................................... 19
    Deciding Fault and Amount – Coverages U and U3 ............................................... 19
    Limits – Coverages U and U3 ................ 19
    Limits – Coverage U3 ........................... 20
    Nonduplication – Coverages U and U3 ..... 20
    Exclusions – Coverages U and U3 .......... 20
    Exclusions – Coverage U .......................... 20
    Exclusions – Coverage U3 ..................... 21
    If Other Uninsured Motor Vehicle Coverage Applies – Coverage U ............................ 21
    If Other Uninsured Motor Vehicle Coverage Applies – Coverage U3 .......................... 21
    Our Payment Options – Coverages U and U3 ............................................... 22

UNDERINSURED MOTOR VEHICLE COVERAGES ...................................... 23

    Additional Definitions – Coverages W and W3 ............................................. 23
    Insuring Agreement – Coverages W and W3 ............................................. 24
    Consent to Settlement – Coverages W and W3 ............................................. 24
    Deciding Fault and Amount – Coverages W and W3 ............................................. 24
    Limits – Coverages W and W3 ................ 25
    Limits – Coverage W3 .......................... 25
    Nonduplication – Coverages W and W3 ... 25

Exclusions – Coverages W and W3 ............ 26
Exclusions – Coverage W ......................... 26
Exclusions – Coverage W3 ....................... 26
If Other Underinsured Motor Vehicle
Coverage Applies – Coverage W ............. 26
If Other Underinsured Motor Vehicle
Coverage Applies – Coverage W3 ........... 27
Our Payment Options – Coverages W
and W3 .................................................... 28

### PHYSICAL DAMAGE COVERAGES .... 28

Additional Definitions............................. 28
Insuring Agreements ............................... 29
Supplementary Payments – Comprehensive
Coverage and Collision Coverage............. 31
Limits and Loss Settlement – Comprehensive
Coverage and Collision Coverage............. 31
Limits – Car Rental and Travel Expenses
Coverage .................................................. 33
Nonduplication......................................... 33
Exclusions ............................................... 33
If Other Physical Damage Coverage or
Similar Coverage Applies ........................ 35
Financed Vehicle ..................................... 36
Our Payment Options .............................. 36

### INSURED'S DUTIES ............................ 37

Notice to Us of an Accident or Loss.......... 37
Notice to Us of a Claim or Lawsuit........... 37
Insured's Duty to Cooperate With Us........ 37
Questioning Under Oath............................ 37
Other Duties Under the Physical
Damage Coverages.................................. 38
Other Duties Under First Party Coverages,
Uninsured Motor Vehicle Coverages, and
Underinsured Motor Vehicle Coverages ... 38

### GENERAL TERMS ................................ 39

When Coverage Applies ........................... 39
Where Coverage Applies.......................... 39
Newly Owned or Newly Leased Car......... 39
Changes to This Policy ............................ 40
Premium .................................................. 40
Renewal ................................................... 41
Nonrenewal.............................................. 41
Cancellation............................................. 41
Assignment .............................................. 42
Bankruptcy or Insolvency of the Insured .. 42
Concealment or Fraud ............................. 42
Our Right to Recover Our Payments........ 42
Legal Action Against Us .......................... 42
Choice of Law ......................................... 43
Severability.............................................. 43

# THIS POLICY

1. This policy consists of:

   a. the most recently issued Declarations Page;

   b. the policy booklet version shown on that Declarations Page; and

   c. any endorsements that apply, including those listed on that Declarations Page as well as those issued in connection with any subsequent renewal of this policy.

2. This policy contains all of the agreements between all named insureds and applicants and:

   a. *us*; and

   b. any of *our* agents.

3. *We* agree to provide insurance according to the terms of this policy:

   a. based on payment of premium for the coverages chosen; and

   b. unless otherwise stated in EXCEPTIONS, POLICY BOOKLET, AND ENDORSEMENTS on the Declarations Page, in reliance on the following statements:

   (1) The named insured is the sole owner of *your car*.

   (2) Neither *you* nor any member of *your* household has, within the past three years, had:

(a) vehicle insurance canceled or nonrenewed by an insurer; or

(b) either:

(i) a license to drive; or

(ii) a vehicle registration suspended, revoked, or refused.

(3) *Your car* is used for pleasure and business.

4. All named insureds and applicants agree by acceptance of this policy that:

a. the statements in 3.b. above are made by the named insured or applicant and are true; and

b. *we* provide this insurance on the basis those statements are true.

# DEFINITIONS

*We* define certain words and phrases below for use throughout the policy. Each coverage includes additional definitions only for use with that coverage. These definitions apply to the singular, plural, and possessive forms of these words and phrases. Defined words and phrases are printed in boldface italics.

*Bodily Injury* means bodily injury to a *person* and sickness, disease, or death that results from it.

*Car* means a land motor vehicle with four or more wheels, designed for use primarily on public roads. It does not include:

1. Any vehicle while located for use as a dwelling or other premises; or

2. A truck-tractor designed to pull any type of trailer.

*Car Business* means a business or job where the purpose is to sell, lease, rent, repair, service, modify, transport, store, or park land motor vehicles or any type of trailer.

*Fungi* means any type or form of fungus or fungi and includes:

1. Mold;

2. Mildew; and

3. Any of the following that are produced or released by fungi:

a. Mycotoxins;

b. Spores;

c. Scents; or

d. Byproducts.

*Newly Acquired Car* means a *car* newly *owned by you*. A *car* ceases to be a *newly acquired car* on the earlier of:

1. the effective date and time of a policy, including any binder, issued by *us* or any other company that describes such *car* as an insured vehicle; or

2. the end of the 14th calendar day immediately following the date such *car* is delivered to *you*.

If a *newly acquired car* is not otherwise afforded comprehensive coverage or collision coverage by this or any other policy, then this policy will provide Comprehensive Coverage or Collision Coverage for that *newly acquired car*, subject to a deductible of $500. Any coverage provided as a result of this paragraph will apply only until the end of the 5th calendar day immediately following the date the *newly acquired car* is delivered to *you*.

*Non-Owned Car* means a *car* that is in the lawful possession of *you* or any *resident relative* and that neither:

1. is *owned by*:

a. *you*;

4

9838A

b. any *resident relative*;

c. any other *person* who resides primarily in *your* household; or

d. an employer of any *person* described in a., b., or c. above; nor

2. has been operated by, rented by, or in the possession of:

a. *you*; or

b. any *resident relative*

during any part of each of the 31 or more consecutive days immediately prior to the date of the accident or *loss*.

*Occupying* means in, on, entering, or exiting.

*Our* means the Company issuing this policy as shown on the Declarations Page.

*Owned By* means:

1. owned by;

2. registered to; or

3. leased, if the lease is written for a period of 31 or more consecutive days, to.

*Pedestrian* means a *person* who is not *occupying*:

1. a motorized vehicle; or

2. a vehicle designed to be pulled by a motorized vehicle.

*Person* means a human being.

*Private Passenger Car* means:

1. a *car* of the private passenger type, other than a pickup truck, van, minivan, or sport utility vehicle, designed primarily to carry *persons* and their luggage; or

2. a pickup truck, van, minivan, or sport utility vehicle:

a. that is not used for:

(1) wholesale; or

(2) retail

pick up or delivery; and

b. that has a Gross Vehicle Weight Rating of 10,000 pounds or less.

*Resident Relative* means a *person*, other than *you*, who resides primarily with the first *person* shown as a named insured on the Declarations Page and who is:

1. related to that named insured or his or her spouse by blood, marriage, or adoption, including an unmarried and unemancipated child of either who is away at school and otherwise maintains his or her primary residence with that named insured; or

2. a ward or a foster child of that named insured, his or her spouse, or a *person* described in 1. above.

See First Party Coverages for the definition of *Resident Relative* used there.

*Serious injury* means a personal injury resulting in death, serious impairment of body function or permanent serious disfigurement.

Unless the injury sustained is a *serious injury*, each person who is bound by the limited tort election shall be precluded from maintaining an action for any noneconomic loss, except that:

1. An individual otherwise bound by the limited tort election who sustains damages in a motor vehicle accident as the consequence of the fault of another person may recover damages as if the individual damaged had elected the full tort alternative whenever the person at fault:

a. is convicted, or accepts Accelerated Rehabilitative Disposition (ARD), for driving under the influence of alcohol or a controlled substance in that accident;

b. is operating a motor vehicle registered in another state;

c. intends to injure himself or another person, provided that an individual does not intentionally injure himself or another person merely because his act

5
9838A

or failure to act is intentional or done with his realization that it creates a grave risk of causing injury or the act or omission causing the injury is for the purpose of averting bodily harm to himself or another person;

d.  has not maintained financial responsibility as required by Chapter 17 of Title 75 of the Pennsylvania Consolidated Statutes, provided that, nothing in this paragraph shall affect the limitation of section 1731(d)(2) of Title 75 of the Pennsylvania Consolidated Statutes (relating to availability, scope and amount of coverage); or

e.  is *occupying* a vehicle both *owned by* a *resident relative* and to which the full tort election applies.

2.  An individual otherwise bound by the limited tort election shall retain full tort rights with respect to claims against a person in the business of designing, manufacturing, repairing, servicing or otherwise maintaining motor vehicles arising out of a defect in such motor vehicle which is caused by or not corrected by an act or omission in the course of such business, other than a defect in a motor vehicle which is operated by such business.

3.  An individual otherwise bound by the limited tort election shall retain full tort rights if injured while an occupant of a motor vehicle other than a private passenger motor vehicle.

*State Farm Companies* means one or more of the following:

1.  State Farm Mutual Automobile Insurance Company;

2.  State Farm Fire and Casualty Company; and

3.  Any of their affiliates.

*Temporary Substitute Car* means a car that is in the lawful possession of the *person* operating it and that:

1.  replaces *your car* for a short time while *your car* is out of use due to its:

    a.  breakdown;

    b.  repair;

    c.  servicing;

    d.  damage; or

    e.  theft; and

2.  neither *you* nor the *person* operating it own or have registered.

If a car qualifies as both a *non-owned car* and a *temporary substitute car*, then it is considered a *temporary substitute car* only.

*Trailer* means:

1.  only those trailers:

    a.  designed to be pulled by a *private passenger car*;

    b.  not designed to carry *persons*; and

    c.  while not used as premises for office, store, or display purposes; or

2.  a farm implement or farm wagon while being pulled on public roads by a *car*.

*Us* means the Company issuing this policy as shown on the Declarations Page.

*We* means the Company issuing this policy as shown on the Declarations Page.

*You* or *Your* means the named insured or named insureds shown on the Declarations Page. If a named insured shown on the Declarations Page is a *person*, then "*you*" or "*your*" includes the spouse of the first *person* shown as a named insured if the spouse resides primarily with that named insured.

*Your Car* means a vehicle shown under YOUR CAR on the Declarations Page. *Your Car* does not include a vehicle that *you* no longer own or lease.

If a *car* is shown on the Declarations Page under YOUR CAR, and *you* ask *us* to replace it with a *car* newly *owned by you*, then the *car* being replaced will continue to be considered *your car* until the earliest of:

1. the end of the 30th calendar day immediately following the date the *car* newly *owned by you* is delivered to *you*;

2. the date this policy is no longer in force; or

3. the date *you* no longer own or lease the *car* being replaced.

# LIABILITY COVERAGE

This policy provides Liability Coverage to the vehicles for which symbol "A" and a corresponding premium are shown on the Declarations Page.

**Additional Definition**

*Insured* means:

1. *you* and *resident relatives* for:

   a. the ownership, maintenance, or use of:

      (1) *your car*;

      (2) a *newly acquired car*; or

      (3) a *trailer*; and

   b. the maintenance or use of:

      (1) a *non-owned car*; or

      (2) a *temporary substitute car*;

2. the first *person* shown as a named insured on the Declarations Page and that named insured's spouse who resides primarily with that named insured for the maintenance or use of a *car* that is *owned by*, or furnished by an employer to, a *person* who resides primarily in *your* household, but only if such *car* is neither *owned by*, nor furnished by an employer to, the first *person* shown as a named insured on the Declarations Page or that *person's* spouse;

3. any other *person* for his or her use of:

   a. *your car*;

   b. a *newly acquired car*;

   c. a *temporary substitute car*; or

   d. a *trailer* while attached to a *car* described in a., b., or c. above.

   Such vehicle must be used within the scope of *your* consent; and

4. any other *person* or organization vicariously liable for the use of a vehicle by an *insured* as defined in 1., 2., or 3. above, but only for such vicarious liability. This provision applies only if the vehicle is neither *owned by*, nor hired by, that other *person* or organization.

*Insured* does not include the United States of America or any of its agencies.

**Insuring Agreement**

1. *We* will pay:

   a. damages an *insured* becomes legally liable to pay because of:

      (1) *bodily injury* to others; and

      (2) damage to property

      caused by an *accident* that involves a vehicle for which that *insured* is provided Liability Coverage by this policy;

   b. attorney fees for attorneys chosen by *us* to defend an *insured* who is sued for such damages; and

c. court costs charged to an *insured* and resulting from that part of a lawsuit:

(1) that seeks damages payable under this policy's Liability Coverage; and

(2) against which *we* defend an *insured* with attorneys chosen by *us*.

*We* have no duty to pay attorney fees and court costs incurred after *we* deposit in court or pay the amount due under this policy's Liability Coverage.

2. *We* have the right to:

a. investigate, negotiate, and settle any claim or lawsuit;

b. defend an *insured* in any claim or lawsuit, with attorneys chosen by *us*; and

c. appeal any award or legal decision

for damages payable under this policy's Liability Coverage.

## Supplementary Payments

*We* will pay, in addition to the damages, fees, and costs described in the **Insuring Agreement** above, the interest, premiums, costs, and expenses listed below that result from such accident:

1. Interest on damages owed by the *insured* that accrues:

a. before a judgment, where owed by law, but only on that part of the judgment *we* pay; and

b. after a judgment. *We* will not pay interest on damages paid or payable by a party other than the *insured* or *us*.

*We* have no duty to pay interest that accrues after *we* deposit in court, pay, or offer to pay, the amount due under this policy's Liability Coverage;

2. Premiums for bonds, provided by a company chosen by *us*, required to appeal a decision in a lawsuit against an *insured*. *We* have no duty to:

a. pay for bonds that exceed this policy's applicable Liability Coverage limit;

b. furnish or apply for any bonds; or

c. pay premiums for bonds purchased after *we* deposit in court, pay, or offer to pay, the amount due under this policy's Liability Coverage; and

3. The following costs and expenses if related to and incurred after a lawsuit has been filed against an *insured*:

a. Loss of wages or salary, but not other income, up to $200 for each day an *insured* attends, at *our* request:

(1) an arbitration;

(2) a mediation; or

(3) a trial of a lawsuit; and

b. Reasonable expenses incurred by an *insured* at *our* request other than loss of wages, salary, or other income.

The amount of any of the costs or expenses listed above that are incurred by an *insured* must be reported to *us* before *we* will pay such incurred costs or expenses.

## Limits

The Liability Coverage limits for *bodily injury* are shown on the Declarations Page under "Liability Coverage – Bodily Injury Limits – Each Person, Each Accident."

The limit shown under "Each Person" is the most *we* will pay for all damages resulting from *bodily injury* to any one *person* injured in any one accident, including all damages sustained by other *persons* as a result of that *bodily injury*. The limit shown under "Each Accident" is the most *we* will pay, subject to the limit for "Each Person", for all damages resulting from *bodily injury* to two or more *persons* injured in the same accident.

The Liability Coverage limit for damage to property is shown on the Declarations Page under "Liability Coverage – Property Damage Limit – Each Accident". The limit shown is

the most *we* will pay for all damages resulting from damage to property in any one accident.

These Liability Coverage limits are the most *we* will pay regardless of the number of:

1. *insureds*;

2. claims made;

3. vehicles insured; or

4. vehicles involved in the accident.

**Nonduplication**

*We* will not pay any damages or expenses under Liability Coverage that have already been paid under Uninsured Motor Vehicle Coverage or Underinsured Motor Vehicle Coverage of any policy issued by the *State Farm Companies* to *you* or any *resident relative*.

**Exclusions**

THERE IS NO COVERAGE FOR AN *INSURED*:

1. WHO INTENTIONALLY CAUSES *BODILY INJURY* OR DAMAGE TO PROPERTY;

2. FOR *BODILY INJURY* TO:

    a. *YOU*;

    b. *RESIDENT RELATIVES*; AND

    c. ANY OTHER *PERSON* WHO BOTH RESIDES PRIMARILY WITH AN *INSURED* AND WHO:

    (1) IS RELATED TO THAT *INSURED* BY BLOOD, MARRIAGE, OR ADOPTION; OR

    (2) IS A WARD OR FOSTER CHILD OF THAT *INSURED*;

3. OR FOR THAT *INSURED'S* INSURER FOR ANY OBLIGATION UNDER ANY TYPE OF WORKERS' COMPENSATION, DISABILITY, OR SIMILAR LAW;

4. FOR *BODILY INJURY* TO THAT *INSURED'S* EMPLOYEE WHICH ARISES OUT OF THAT EMPLOYEE'S EMPLOYMENT. This exclusion does not apply to that *insured's* household

employee who is neither covered, nor required to be covered, under workers' compensation insurance;

5. FOR *BODILY INJURY* TO THAT *INSURED'S* FELLOW EMPLOYEE WHILE THE FELLOW EMPLOYEE IS IN THE COURSE AND SCOPE OF HIS OR HER EMPLOYMENT. This exclusion does not apply to *you* and *resident relatives* who are legally liable for *bodily injury* to fellow employees;

6. FOR DAMAGES ARISING OUT OF THE OWNERSHIP, MAINTENANCE, OR USE OF A VEHICLE WHILE IT IS RENTED TO OR LEASED TO OTHERS BY AN *INSURED*;

7. FOR DAMAGES ARISING OUT OF THE OWNERSHIP, MAINTENANCE, OR USE OF A VEHICLE WHILE IT IS BEING USED TO CARRY *PERSONS* FOR A CHARGE. This exclusion does not apply to the use of a *private passenger car* on a share-the-expense basis;

8. WHILE MAINTAINING OR USING A VEHICLE IN CONNECTION WITH THAT *INSURED'S* EMPLOYMENT IN OR ENGAGEMENT OF ANY KIND IN A *CAR BUSINESS*. This exclusion does not apply to:

    a. *you*; or

    b. any *resident relative*

    while maintaining or using *your car*, a *newly acquired car*, a *temporary substitute car*, or a *trailer*;

9. WHILE THAT *INSURED* IS VALET PARKING A VEHICLE;

10. WHILE MAINTAINING OR USING ANY VEHICLE OTHER THAN *YOUR CAR*, A *NEWLY ACQUIRED CAR*, A *TEMPORARY SUBSTITUTE CAR*, OR A *TRAILER* IN ANY BUSINESS OR OCCUPATION OTHER THAN A *CAR BUSINESS* OR VALET PARKING. This exclusion does not apply to the maintenance or use of a *private passenger car*;

9

9828

11. FOR DAMAGE TO PROPERTY WHILE IT IS:

   a. *OWNED BY*;

   b. *RENTED TO*;

   c. USED BY;

   d. IN THE CARE OF; OR

   e. TRANSPORTED BY

*YOU*, *A RESIDENT RELATIVE*, OR THE *PERSON WHO IS LEGALLY LIABLE FOR THE DAMAGE*. This exclusion does not apply to either damage to a residence while rented to or leased to an *insured* or damage to a private garage while rented to or leased to an *insured*;

12. FOR LIABILITY ASSUMED UNDER ANY CONTRACT OR AGREEMENT;

13. FOR ANY ORDER OF RESTITUTION ISSUED BY A COURT IN A CRIMINAL PROCEEDING OR EQUITABLE ACTION;

14. WHILE USING A *TRAILER* WITH A MOTOR VEHICLE IF THAT *INSURED* IS NOT PROVIDED LIABILITY COVERAGE BY THIS POLICY FOR THE USE OF THAT MOTOR VEHICLE;

15. FOR THE OWNERSHIP, MAINTENANCE, OR USE OF ANY VEHICLE WHILE IT IS:

   a. OFF PUBLIC ROADS AND BEING PREPARED FOR, USED IN PRACTICE FOR, OR OPERATED IN ANY RACING CONTEST, SPEED CONTEST, HILL-CLIMBING CONTEST, JUMPING CONTEST, OR ANY SIMILAR CONTEST; OR

   b. ON A TRACK DESIGNED PRIMARILY FOR RACING OR HIGH SPEED DRIVING. This exclusion does not apply if the vehicle is being used in connection with an activity other than racing, high speed driving, or any type of competitive driving; OR

16. WHO IS AN EMPLOYEE OF THE UNITED STATES OF AMERICA OR ANY OF ITS AGENCIES, IF THE PROVISIONS OF THE FEDERAL TORT CLAIMS ACT APPLY.

**If Other Liability Coverage Applies**

1. If two or more Liability Coverages provided by the *State Farm Companies* to *you* or any *resident relative* apply to the same accident, then:

   a. such Liability Coverage limits will not be added together to determine the most that may be paid; and

   b. the maximum amount that may be paid from all such coverages combined is the single highest applicable limit provided by any one of the coverages. *We* may choose one or more coverages from which to make payment.

2. The Liability Coverage provided by this policy applies as primary coverage for the ownership, maintenance, or use of *your car* or a *trailer* attached to it.

   a. If:

     (1) this is the only Car Policy issued to *you* or any *resident relative* by the *State Farm Companies* that provides Liability Coverage which applies to the accident as primary coverage; and

     (2) liability coverage provided by one or more sources other than the *State Farm Companies* also applies as primary coverage for the same accident,

   then *we* will pay the proportion of damages payable as primary that *our* applicable limit bears to the sum of *our* applicable limit and the limits of all other liability coverage that apply as primary coverage.

b. If:

    (1) more than one Car Policy issued to *you* or any *resident relative* by the *State Farm Companies* provides Liability Coverage which applies to the accident as primary coverage; and

    (2) liability coverage provided by one or more sources other than the *State Farm Companies* also applies as primary coverage for the same accident,

then the *State Farm Companies* will pay the proportion of damages payable as primary that the maximum amount that may be paid by the *State Farm Companies* as determined in 1. above bears to the sum of such amount and the limits of all other liability coverage that apply as primary coverage.

3. Except as provided in 2. above, the Liability Coverage provided by this policy applies as excess coverage.

a. If:

    (1) this is the only Car Policy issued to *you* or any *resident relative* by the *State Farm Companies* that provides Liability Coverage which applies to the accident as excess coverage; and

    (2) liability coverage provided by one or more sources other than the *State Farm Companies* also applies as excess coverage for the same accident,

then *we* will pay the proportion of damages payable as excess that *our* applicable limit bears to the sum of *our* applicable limit and the limits of all other liability coverage that apply as excess coverage.

b. If:

    (1) more than one Car Policy issued to *you* or any *resident relative* by the *State Farm Companies* provides Liability Coverage which applies to the accident as excess coverage; and

    (2) liability coverage provided by one or more sources other than the *State Farm Companies* also applies as excess coverage for the same accident,

then the *State Farm Companies* will pay the proportion of damages payable as excess that the maximum amount that may be paid by the *State Farm Companies* as determined in 1. above bears to the sum of such amount and the limits of all other liability coverage that apply as excess coverage.

### Required Out-of-State Liability Coverage

If:

1. an *insured* is in another state of the United States of America, a territory or possession of the United States of America, the District of Columbia, or any province or territory of Canada, and as a nonresident becomes subject to its motor vehicle compulsory insurance law, financial responsibility law, or similar law; and

2. this policy does not provide at least the minimum liability coverage required by such law for such nonresident,

then this policy will be interpreted to provide the minimum liability coverage required by such law.

This provision does not apply to liability coverage required by law for motor carriers of passengers or motor carriers of property.

### Financial Responsibility Certification

When this policy is certified under any law as proof of future financial responsibility, and while required during the policy period, this policy will comply with such law to the extent required.

# FIRST PARTY COVERAGES

The coverages under this section are provided in accordance with and subject to the Pennsylvania Motor Vehicle Financial Responsibility Act, as amended.

**Additional Definitions – Coverages C2, Q, Z, Y, and F**

*Bodily Injury* means accidental bodily harm to a *person* and that *person's* resulting illness, disease or death.

*First Party Benefits* means benefits paid or payable to an *insured* under Coverages C2, Q, Z, Y or F.

*Insured* means:

1. *you* and *resident relatives*; and

2. any other *person*:

   a. *occupying your car* or a *newly acquired car*; or

   b. not *occupying* a *motor vehicle* if injured as the result of an accident involving *your car*, or a *newly acquired car*. A parked and unoccupied *motor vehicle* is not a *motor vehicle* involved in the accident unless it was parked so as to cause unreasonable risk of injury.

*Motor Vehicle* means a vehicle which is self-propelled except one which is propelled:

1. solely by human power; or

2. upon rails.

*Resident Relative* means:

1. *your* spouse;

2. anyone related to *you* by blood, marriage or adoption; and

3. a minor in the custody of *you*, *your spouse* or a *resident relative*

resident in *your* household, even if temporarily residing elsewhere.

## MEDICAL PAYMENTS – COVERAGE C2

This policy provides Coverage C2 to the vehicles for which symbol "C2" and a corresponding premium are shown on the Declarations Page.

**Insuring Agreement – Coverage C2**

*We* will pay for medical expenses for *bodily injury* to an *insured* arising out of the maintenance or use of a *motor vehicle.*

Medical expenses are expenses incurred for reasonable and necessary medical treatment and rehabilitation services. This includes expenses for:

1. hospital, dental, surgical, psychiatric, psychological, osteopathic, ambulance, chiropractic, nursing and optometric services;

2. licensed physical therapy, vocational rehabilitation, occupational therapy, speech pathology and audiology;

3. medications, medical supplies and prosthetic devices; and

4. nonmedical remedial care and treatment rendered in accordance with a recognized religious method of healing.

Medical expenses will be paid:

1. if incurred within 18 months from the date of the accident causing the *bodily injury*; or

2. without limitation as to time, provided that, within 18 months from the date of the accident causing the *bodily injury*, it can be determined with reasonable medical probability that further expenses may be incurred as a result of the *bodily injury.*

The amount *we* will pay for medical expenses is subject to the limitations of Title 75 of the Pennsylvania Consolidated Statutes.

12
9838A

## EXTRAORDINARY MEDICAL PAYMENTS – COVERAGE Q

This policy provides Coverage Q to the vehicles for which symbol "Q" and a corresponding premium are shown on the Declarations Page.

### Insuring Agreement and Limits – Coverage Q

*We* will pay up to the lifetime aggregate limit of $1,000,000 for those reasonable medical expenses which exceed $100,000. The medical expense must be for *bodily injury* to an *insured* caused by accident arising out of the maintenance or use of a *motor vehicle*.

Medical expenses are expenses incurred for reasonable and necessary medical treatment and rehabilitation services. This includes expenses for:

1. hospital, dental, surgical, psychiatric, psychological, osteopathic, ambulance, chiropractic, nursing and optometric services;

2. licensed physical therapy, vocational rehabilitation, occupational therapy, speech pathology and audiology;

3. medications, medical supplies and prosthetic devices; and

4. nonmedical remedial care and treatment rendered in accordance with a recognized religious method of healing.

Medical expenses will be paid:

1. if incurred within 18 months from the date of the accident causing the *bodily injury*; or

2. without limitation as to time, provided that within 18 months from the date of the accident causing the *bodily injury*, it can be determined with reasonable medical probability that further expenses may be incurred as a result of the *bodily injury*.

The most *we* will pay in any 12-month period beginning 18 months after the date the *insured's* reasonable medical expenses exceed $100,000 as a result of the *bodily injury* is $50,000:

These expenses must be:

1. for:

   a. services performed, or

   b. medical supplies, medication or drugs prescribed

   by a medical provider licensed by the state to provide the specific medical services; and

2. for diagnosis, direct care or treatment of the *bodily injury*. The diagnosis, direct care or treatment must be:

   a. within the standards of good medical practice, and

   b. not primarily for the convenience of the patient or medical provider.

*We* have the right to make or obtain an independent review of the medical expenses and services performed to determine if they are reasonable and necessary for the *bodily injury* sustained.

The amount *we* will pay for medical expenses is subject to the limitations of Title 75 of the Pennsylvania Consolidated Statutes.

REASONABLE MEDICAL EXPENSES DO NOT INCLUDE EXPENSES FOR TREATMENT, SERVICES, PRODUCTS OR PROCEDURES THAT ARE:

1. FOR RESEARCH, OR NOT PRIMARILY DESIGNED TO SERVE A MEDICAL OR REHABILITATIVE PURPOSE; OR

2. NOT COMMONLY AND CUSTOMARILY RECOGNIZED THROUGHOUT THE MEDICAL PROFESSIONS AND WITHIN THE UNITED STATES AS APPROPRIATE FOR THE TREATMENT OF THE *BODILY INJURY*.

## LOSS OF INCOME – COVERAGE Z

This policy provides Coverage Z to the vehicles for which "Z" with a number beside it and a corresponding premium are shown on the Declarations Page. "Z" with a number beside it is *your* coverage symbol. Check *your* coverage symbol with the Coverage Z schedule in this provision for the limits *you* have chosen.

### Insuring Agreement – Coverage Z

*We* will pay income loss benefits with respect to *bodily injury* to an *insured* arising out of the maintenance or use of a *motor vehicle*. Income loss benefits are:

1. 80% of the *insured's* actual loss of gross income from work the *insured* would have performed except for the *bodily injury*;

2. reasonable expenses actually incurred for:

   a. hiring a substitute to perform self-employment services to reduce loss of gross income; or

   b. hiring special help thereby enabling the *insured* to work and reduce loss of gross income.

Income loss benefits do not include:

1. loss of expected income for any period following the death of an *insured*;

2. expenses incurred for services performed following the death of an *insured*; or

3. any loss of income during the first five working days the *insured* did not work after the accident because of the *bodily injury*.

### Schedule – Coverage Z

| Coverage Symbol | Maximum Payable Per Month | Total Maximum Benefits |
|---|---|---|
| Z1 | $1,000 | $ 5,000 |
| Z2 | 1,000 | 15,000 |
| Z3 | 1,500 | 25,000 |
| Z4 | 2,500 | 50,000 |

## DEATH, DISMEMBERMENT AND LOSS OF SIGHT – COVERAGE Y

This policy provides Coverage Y to the vehicles for which "Y" with a number beside it and a corresponding premium are shown on the Declarations Page. "Y" with a number beside it is *your* coverage symbol. Check *your* coverage symbol with the Coverage Y schedule in this provision for the limits *you* have chosen.

### Additional Definition – Coverage Y

*Loss* means the *loss* of:

1. the foot or hand, cut off through or above the ankle or wrist; or

2. the whole thumb or finger; or

3. all sight.

### Insuring Agreement – Coverage Y

*We* will pay the amount shown in the schedule that applies for death of, or *loss* to, an *insured* arising out of the maintenance or use of a *motor vehicle*. The death or *loss* must be the direct result of the accident and not due to any other cause. The death must occur within 24 months from the date of the accident. If the death occurs within 24 hours after the accident, *we* will pay only the amount that applies to death. *Loss* must occur within 90 days of the accident.

14
9838A

## Schedule – Coverage Y

| Coverage Symbol | Y1 | Y2 | Y3 |
|---|---|---|---|
| Death | $5,000 | $10,000 | $25,000 |
| Loss of: hands, feet; sight of eyes; one hand & one foot; or one hand or one foot & sight of one eye | 5,000 | 10,000 | 25,000 |
| one hand or one foot; or sight of one eye | 2,500 | 5,000 | 12,500 |
| thumb & finger on one hand; or three fingers | 1,500 | 3,000 | 7,500 |
| any two fingers | 1,000 | 2,000 | 5,000 |

### Payments of Benefits – Coverage Y

The death benefit shall be paid to the executor or administrator of the *insured's* estate.

### FUNERAL BENEFITS – COVERAGE F

This policy provides Coverage F to the vehicles for which symbol "F" and a corresponding premium are shown on the Declarations Page.

### Insuring Agreement – Coverage F

*We* will pay for funeral expenses directly related to the funeral, burial, cremation or other form of disposition of the remains of an *insured*. The death must be the result of the accident. The expenses must be incurred within 24 months from the date of the accident.

### Limits – Coverage C2

The amount of coverage for medical expenses is shown on the Declarations Page under "Medical Payments Coverage – Limit – Each Person".

### Limits – Coverage Z

The most *we* will pay an *insured* for income loss benefits per month and in the aggregate are shown in the coverage Z schedule next to *your* coverage symbol.

### Limits – Coverage Y

The amount *we* will pay because of the death of the *insured* is shown under *your* coverage symbol in the Coverage Y schedule. The maximum amount payable to an *insured* for all *loss*, as shown in the schedule, shall not exceed the death benefit amount shown for *your* coverage symbol.

The amount shown in the schedule for death of or *loss* to the *insured* is doubled for an *insured* who, at the time of the accident, is using the vehicle's complete restraint system as recommended by the vehicle's manufacturer.

### Limits – Coverage F

The amount of coverage for funeral expenses is shown on the Declarations Page under "Funeral Benefits Coverage – Limit – Each Person".

### Limits – Coverages C2, Q, Z, Y, and F

These coverages are excess over, but shall not duplicate, any amount paid or payable to or for the *insured* under any workers' compensation law.

### Priorities for the Payment of First Party Benefits – Coverages C2, Q, Z, Y, and F

1. When more than one policy applies, the *person* who suffers *bodily injury* shall recover *first party benefits* against applicable insurance coverage in the following order of priority:

   a. The policy on which the *person* is a named insured.

   b. The policy providing coverage because the *person* is residing in the household of a named insured and is:

15
9838A

(1) a spouse or other relative of a named insured; or,

(2) a minor in the custody of either a named insured or a relative of a named insured.

c. The policy covering the *motor vehicle occupied* by the injured *person* at the time of the accident.

d. For a *person* who is not the occupant of a *motor vehicle*, the policy on any *motor vehicle* involved in the accident. A parked and unoccupied *motor vehicle* is not a *motor vehicle* involved in the accident unless it was parked so as to cause unreasonable risk of injury.

2. THIS POLICY DOES NOT APPLY IF THERE IS ANOTHER POLICY AT A HIGHER PRIORITY LEVEL. Item a. above is considered the highest priority. Item d. is the lowest priority.

3. Subject to the above, if an *insured* is entitled to *first party benefits* under more than one coverage, the maximum recovery under all coverages for any *first party benefit* will not exceed the amount payable under the coverage with the highest limit of liability for that *first party benefit*.

**Exclusions – Coverages C2, Q, Z, Y, and F**

THERE IS NO COVERAGE FOR *BODILY INJURY*:

1. TO ANY *PERSON* WHOSE CONDUCT CONTRIBUTED TO HIS OR HER *BODILY INJURY* IN ANY OF THE FOLLOWING WAYS:

   a. WHILE INTENTIONALLY INJURING OR ATTEMPTING TO INJURE HIMSELF, HERSELF OR ANOTHER;

   b. WHILE COMMITTING A FELONY; OR

   c. WHILE SEEKING TO ELUDE LAWFUL APPREHENSION OR ARREST BY A LAW ENFORCEMENT OFFICIAL.

2. TO ANY *PERSON* WHO KNOWINGLY CONVERTS A *MOTOR VEHICLE* if the *bodily injury* arises out of the maintenance or use of the converted vehicle. This does not apply to *you* or any *resident relative*.

3. TO ANY *PERSON* WHO OWNS A CURRENTLY REGISTERED *MOTOR VEHICLE* AND DOES NOT HAVE THE REQUIRED FINANCIAL RESPONSIBILITY, EVEN IF THAT *PERSON* IS *OCCUPYING* OR STRUCK BY A *MOTOR VEHICLE* FOR WHICH FINANCIAL RESPONSIBILITY IS PROVIDED. This does not apply to *you* or *your spouse* while *occupying* a vehicle insured under the liability coverage of this policy or when struck as a *pedestrian*.

4. TO ANY *PERSON* WHILE OPERATING OR *OCCUPYING*:

   a. A RECREATIONAL VEHICLE NOT INTENDED FOR HIGHWAY USE; OR

   b. A MOTORCYCLE, MOTORDRIVEN CYCLE, MOTORIZED PEDALCYCLE OR LIKE TYPE VEHICLE REQUIRED TO BE REGISTERED UNDER TITLE 75 OF THE PENNSYLVANIA CONSOLIDATED STATUTES.

**Mental or Physical Examination – Coverages C2, Q, Z, Y, and F**

Whenever the mental or physical condition of a *person* is material to any claim for medical expenses or income loss benefits, a court of competent jurisdiction may order the *person* to submit to mental or physical examination by a physician. If a *person* fails to comply with the order, the court may order that the *person* be denied benefits until he or she complies.

16
9838A

## COMBINED BENEFITS – COVERAGE M

This policy provides Coverage M to the vehicles for which symbol "M" and a corresponding premium are shown on the Declarations Page.

### Insuring Agreement – Coverage M

*We* will pay for *bodily injury* to an *insured* arising out of the maintenance or use of a *motor vehicle*:

1.  Medical expenses as payable under Coverage C2;

2.  Income loss benefits as payable under Coverage Z;

3.  The benefits as payable under Coverage Y3; and

4.  Funeral expenses as payable under Coverage F.

### Limits – Coverage M

1.  The aggregate limit of liability is shown on the Declarations Page under "Combined Benefits Coverage – Limit – Each Person". This is the maximum amount payable for *bodily injury* to an *insured* as the result of an accident.

2.  The most *we* will pay to or for an *insured* is as follows:

| Benefit | Limit |
|---|---|
| Medical Expenses | Up to the Aggregate Limit |
| Income Loss | Up to the Aggregate Limit |
| Death | $25,000 |
| Funeral Expenses | Up to $2,500 |

3.  Any amount payable for medical expenses greater than $100,000 shall be excess over any amount paid or payable under Extraordinary Medical Payments – Coverage Q.

### Time Limitation – Coverage M

Subject to the limit of liability:

1.  benefits are only payable for expenses and loss incurred up to three years from the date of the accident.

2.  the death benefit is payable only if death occurs within three years of the date of the accident.

### Other Provisions – Coverage M

Except as amended above, all provisions relating to Coverages C2, Z, Y, and F apply to expense, loss or death benefits of Coverage M.

## UNINSURED MOTOR VEHICLE COVERAGES

This policy provides Uninsured Motor Vehicle – Coverage U (Stacking Option) to the vehicles for which symbol "U" and a corresponding premium are shown on the Declarations Page.

This policy provides Uninsured Motor Vehicle – Coverage U3 (Non-Stacking Option) to the vehicles for which symbol "U3" and a corresponding premium are shown on the Declarations Page.

### Additional Definitions – Coverages U and U3

*Insured* means:

1.  *you*;

2.  *resident relatives*;

3.  any other *person* while *occupying*:

    a.  *your car*, a *temporary substitute car*, or a trailer attached to such a *car*. Such other *person is an insured* only under the *coverage* applicable to the vehicle

17
9838A

which that *person* was *occupying* and such *person* is not an *insured* under the coverage applicable to any other vehicle insured by this policy. Such vehicle has to be used within the scope of *your* consent; or

b.  a *newly acquired car* or a trailer attached to such a *car*. If the *newly acquired car* replaces *your car*, such other *person* is an *insured* only under the coverage applicable to the vehicle that was replaced. If the *newly acquired car* does not replace *your car*, such other *person* is an *insured* only under the coverage applicable to any one vehicle insured by this policy or any other policy issued by us to *you* or *your spouse*. Such *car* has to be used within the scope of *your* consent.

Such other *person* occupying a vehicle used to carry *persons* for a charge is not an *insured*; and

4.  any *person* entitled to recover compensatory damages as a result of *bodily injury* to an *insured* as defined in 1., 2., or 3. above.

*Uninsured Motor Vehicle* means a land motor vehicle:

1.  the ownership, maintenance, and use of which is:

    a.  not insured or bonded for bodily injury liability at the time of the accident; or

    b.  insured or bonded for bodily injury liability at the time of the accident; but

        (1)  the limits are less than required by the financial responsibility act of Pennsylvania; or

        (2)  the insuring company:

            (a)  denies that its policy provides liability coverage for compensatory damages that result from the accident; or

            (b)  is or becomes insolvent; or

2.  the owner and driver of which remain unknown and which causes *bodily injury* to the *insured*. If there is no physical contact between that land motor vehicle and the *insured* or the vehicle the *insured* is *occupying*, then the facts of the accident must be corroborated by a disinterested *person* who witnessed the accident. *You, resident relatives*, and *persons occupying* the same vehicle as the *insured* are not disinterested *persons*.

*Uninsured Motor Vehicle* does not include a land motor vehicle:

1.  whose ownership, maintenance, or use is provided Liability Coverage by this policy;

2.  *owned by*, rented to, or furnished or available for the regular use of *you* or any *resident relative*;

3.  *owned by*, rented to, or operated by a self-insurer under any motor vehicle financial responsibility law, any motor carrier law, or any similar law;

4.  designed for use primarily off public roads except while on public roads; or

5.  while located for use as a dwelling or other premises.

**Insuring Agreement – Coverages U and U3**

*We* will pay compensatory damages for *bodily injury* an *insured* is legally entitled to recover from the owner or driver of an *uninsured motor vehicle*. The *bodily injury* must be:

1.  sustained by an *insured*; and

2.  caused by an accident that involves the ownership, maintenance, or use of an *uninsured motor vehicle* as a motor vehicle.

The amount *we* will pay for damages is subject to the limitations of Title 75 of the Pennsylvania Consolidated Statutes.

18
9838A

onsent to Settlement – Coverages U and U3

he **insured** must inform **us** of a settlement fer, if any, proposed by or on behalf of the vner or driver of the **uninsured motor vehi- e**, and the **insured** must request **our** written onsent to accept such settlement offer.

**we**:

consent in writing, then the **insured** may accept such settlement offer.

inform the **insured** in writing that **we** do not consent, then the **insured** may not accept such settlement offer and:

a. **we** will make payment to the **insured** in an amount equal to such settlement offer. This payment is considered a payment made by or on behalf of the owner or driver of the **uninsured motor vehicle**; and

b. any recovery from or on behalf of the owner or driver of the **uninsured motor vehicle** shall first be used to repay **us**.

eciding Fault and Amount – Coverages U .d U3

a. The **insured** and **we** must agree to the answers to the following two questions:

(1) Is the **insured** legally entitled to recover compensatory damages from the owner or driver of the **uninsured motor vehicle**?

(2) If the **insured** and **we** agree that the answer to 1.a.(1) above is yes, then what is the amount of the compensatory damages that the **insured** is legally entitled to recover from the owner or driver of the **uninsured motor vehicle**?

b. If there is no agreement on the answer to either question in 1.a. above, then the **insured** shall:

(1) file a lawsuit, in a state or federal court that has jurisdiction, against:

(a) **us**;

(b) the owner and driver of the **uninsured motor vehicle** unless **we** have consented to a settlement offer proposed by or on behalf of such owner or driver; and

(c) any other party or parties who may be legally liable for the **insured's** damages;

(2) consent to a jury trial if requested by **us**;

(3) agree that **we** may contest the issues of liability and the amount of damages; and

(4) secure a judgment in that action. The judgment must be the final result of an actual trial and any appeals, if any appeals are taken.

2. **We** are not bound by any:

a. judgment obtained without **our** written consent; and

b. default judgment against any **person** or organization other than **us**.

3. Regardless of the amount of any award, including any judgment, or default judgment, **we** are not obligated to pay any amount in excess of the available limits under this coverage of this policy.

Limits – Coverages U and U3

The Uninsured Motor Vehicle Coverage limits are shown on the Declarations Page under "Uninsured Motor Vehicle Coverage – Bodily Injury Limits – Each Person, Each Accident".

The limit shown under "Each Person" is the most **we** will pay for all damages resulting from **bodily injury** to any one **insured** injured in any one accident, including all damages sustained by other **insureds** as a result of that **bodily injury**. The limit shown under "Each Accident" is the most **we** will pay, subject to the limit for "Each Person", for all damages resulting from **bodily injury** to two or more **insureds** injured in the same accident.

19
9838A

These Uninsured Motor Vehicle Coverage limits are the most *we* will pay regardless of the number of:

1. *insureds*;

2. claims made; or

3. *uninsured motor vehicles* involved in the accident.

## Limits – Coverage U3

1. If there is more than one vehicle insured under this policy, the maximum limit of liability available is:

    a. the limit applicable to the vehicle that was involved in the accident while *occupying your car*;

    b. the limit applicable to the vehicle that was replaced while *occupying* a *newly acquired car* that replaces *your car*; or

    c. the limit applicable to any one vehicle insured under this policy while injured as a *pedestrian* or injured while *occupying* a *newly acquired car* that does not replace *your car*, a *temporary substitute car*, or a *non-owned car*.

2. The limits of liability are not increased because more than one vehicle is insured under this policy.

## Nonduplication – Coverages U and U3

*We* will not pay under Uninsured Motor Vehicle Coverage any damages that have already been paid to or for the *insured*:

1. by or on behalf of any *person* or organization who is or may be held legally liable for the *bodily injury* to the *insured*; or

2. for *bodily injury* under Liability Coverage of any policy issued by the *State Farm Companies* to *you* or any *resident relative*.

## Exclusions – Coverages U and U3

THERE IS NO COVERAGE:

1. FOR AN *INSURED* WHO, WITHOUT *OUR* WRITTEN CONSENT, SETTLES WITH ANY *PERSON* OR ORGANIZATION WHO MAY BE LIABLE FOR THE *BODILY INJURY*;

2. FOR PAIN, SUFFERING OR OTHER NONMONETARY DAMAGES SUSTAINED BY AN *INSURED* IF THE *BODILY INJURY* IS NOT A *SERIOUS INJURY* AND THE LIMITATION OF SECTION 1731(d)(2) OF TITLE 75 OF THE PENNSYLVANIA CONSOLIDATED STATUTES APPLIES;

3. FOR AN *INSURED* WHOSE *BODILY INJURY* RESULTS FROM THE DISCHARGE OF A FIREARM;

4. TO THE EXTENT IT BENEFITS:

    a. ANY WORKERS' COMPENSATION OR DISABILITY BENEFITS INSURANCE COMPANY;

    b. A SELF-INSURER UNDER ANY WORKERS' COMPENSATION LAW, DISABILITY BENEFITS LAW, OR SIMILAR LAW; OR

    c. ANY GOVERNMENT OR ANY OF ITS POLITICAL SUBDIVISIONS OR AGENCIES;

5. FOR PUNITIVE OR EXEMPLARY DAMAGES; OR

6. FOR ANY ORDER OF RESTITUTION ISSUED BY A COURT IN A CRIMINAL PROCEEDING OR EQUITABLE ACTION.

## Exclusions – Coverage U

THERE IS NO COVERAGE FOR AN *INSURED* WHO SUSTAINS *BODILY INJURY* WHILE *OCCUPYING* A MOTOR VEHICLE *OWNED BY* THAT *INSURED* IF THE VEHICLE IS NOT INSURED FOR UNINSURED MOTOR VEHICLE COVERAGE UNDER THIS POLICY OR ANY OTHER POLICY.

Exclusions – Coverage U

THERE IS NO COVERAGE FOR AN *INSURED* WHO SUSTAINS *BODILY INJURY* WHILE *OCCUPYING* A MOTOR VEHICLE *OWNED BY YOU* OR ANY *RESIDENT RELATIVE* IF IT IS NOT *YOUR CAR* OR A *NEWLY ACQUIRED CAR*.

This exclusion does not apply to the first *person* shown as a named insured on the Declarations Page and that named insured's spouse who resides primarily with that named insured, while *occupying* a motor vehicle not *owned by* one or both of them.

### If Other Uninsured Motor Vehicle Coverage Applies – Coverage U

1. If uninsured motor vehicle coverage for *bodily injury* is available to an *insured* from more than one policy provided by *us* or any other insurer, any coverage applicable:

   a. under this policy shall apply on a primary basis if the *insured* sustains *bodily injury* while not *occupying* a motor vehicle or trailer.

   b. to the vehicle covered under this policy which the *insured* was *occupying* when the *bodily injury* was sustained shall apply on a primary basis. Any other coverage provided by this policy shall apply on an excess basis.

   c. under this policy shall apply on an excess basis if the *insured* sustains *bodily injury* while *occupying* a vehicle other than *your car*.

2. Subject to item 1 above, if this policy and one or more other policies provide coverage for *bodily injury*:

   a. on a primary basis, *we* are liable only for our share. *Our* share is that percent of the damages payable on a primary basis that the limit of liability of this coverage bears to the total of all applicable uninsured motor vehicle coverage on a primary basis.

   b. on an excess basis, *we* are liable only for our share. *Our* share is that percent of the damages payable on an excess basis that the limit of liability of this coverage bears to the total of all applicable uninsured motor vehicle coverage provided on an excess basis.

### If Other Uninsured Motor Vehicle Coverage Applies – Coverage U3

1. If Uninsured Motor Vehicle Coverage provided by this policy and one or more other vehicle policies issued to *you* or any *resident relative* by one or more of the *State Farm Companies* apply to the same *bodily injury*, then:

   a. the Uninsured Motor Vehicle Coverage limits of such policies will not be added together to determine the most that may be paid; and

   b. the maximum amount that may be paid from all such policies combined is the single highest applicable limit provided by any one of the policies. *We* may choose one or more policies from which to make payment.

2. The Uninsured Motor Vehicle Coverage provided by this policy applies as primary coverage for an *insured* who sustains *bodily injury* while *occupying your car*.

   a. If:

      (1) this is the only vehicle policy issued to *you* or any *resident relative* by the *State Farm Companies* that provides Uninsured Motor Vehicle Coverage which applies to the accident as primary coverage; and

      (2) uninsured motor vehicle coverage provided by one or more sources other than the *State Farm Companies* also applies as primary coverage for the same accident,

21
9838A

then *we* will pay the proportion of damages payable as primary that *our* applicable limit bears to the sum of *our* applicable limit and the limits of all other uninsured motor vehicle coverage that apply as primary coverage.

b. If:

(1) more than one vehicle policy issued to *you* or any *resident relative* by the *State Farm Companies* provides Uninsured Motor Vehicle Coverage which applies to the accident as primary coverage; and

(2) uninsured motor vehicle coverage provided by one or more sources other than the *State Farm Companies* also applies as primary coverage for the same accident,

then the *State Farm Companies* will pay the proportion of damages payable as primary that the maximum amount that may be paid by the *State Farm Companies* as determined in 1. above bears to the sum of such amount and the limits of all other uninsured motor vehicle coverage that apply as primary coverage.

3. Except as provided in 2. above, the Uninsured Motor Vehicle Coverage provided by this policy applies as excess coverage.

a. If:

(1) this is the only vehicle policy issued to *you* or any *resident relative* by the *State Farm Companies* that provides Uninsured Motor Vehicle Coverage which applies to the accident as excess coverage; and

(2) uninsured motor vehicle coverage provided by one or more sources

other than the *State Farm Companies* also applies as excess coverage for the same accident,

then *we* will pay the proportion of damages payable as excess that *our* applicable limit bears to the sum of *our* applicable limit and the limits of all other uninsured motor vehicle coverage that apply as excess coverage.

b. If:

(1) more than one vehicle policy issued to *you* or any *resident relative* by the *State Farm Companies* provides Uninsured Motor Vehicle Coverage which applies to the accident as excess coverage; and

(2) uninsured motor vehicle coverage provided by one or more sources other than the *State Farm Companies* also applies as excess coverage for the same accident,

then the *State Farm Companies* will pay the proportion of damages payable as excess that the maximum amount that may be paid by the *State Farm Companies* as determined in 1. above bears to the sum of such amount and the limits of all other uninsured motor vehicle coverage that apply as excess coverage.

**Our Payment Options – Coverages U and U3**

*We* may, at *our* option, make payment to one or more of the following:

1. The *insured*;

2. The *insured's* surviving spouse;

3. A parent or guardian of the *insured*, if the *insured* is a minor or an incompetent *person*; or

4. A *person* authorized by law to receive such payment.

22
9838A

## UNDERINSURED MOTOR VEHICLE COVERAGES

This policy provides Underinsured Motor Vehicle – Coverage W (Stacking Option) to the vehicles for which symbol "W" and a corresponding premium are shown on the Declarations Page.

This policy provides Underinsured Motor Vehicle – Coverage W3 (Non-Stacking Option) to the vehicles for which symbol "W3" and a corresponding premium are shown on the Declarations Page.

### Additional Definitions – Coverages W and W3

*Insured* means:

1. *you;*

2. *resident relatives;*

3. any other *person* while *occupying*:

   a. *your car,* a *temporary substitute car,* or a trailer attached to such a *car.* Such other *person* is an *insured* only under the coverage applicable to the vehicle which that *person* was *occupying* and such *person* is not an *insured* under the coverage applicable to any other vehicle insured by this policy. Such vehicle has to be used within the scope of *your* consent; or

   b. a *newly acquired car* or a trailer attached to such a *car.* If the *newly acquired car* replaces *your car,* such other *person* is an *insured* only under the coverage applicable to the vehicle that was replaced. If the *newly acquired car* does not replace *your car,* such other *person* is an *insured* only under the coverage applicable to any one vehicle insured by this policy or any other policy issued by us to *you* or *your spouse.* Such *car* has to be used within the scope of *your* consent.

Such other *person occupying* a vehicle used to carry *persons* for a charge is not an *insured;* and

4. any *person* entitled to recover compensatory damages as a result of *bodily injury* to an *insured* as defined in 1., 2., or 3. above.

*Underinsured Motor Vehicle* means a land motor vehicle:

1. the ownership, maintenance, and use of which is either:

   a. insured or bonded for bodily injury liability at the time of the accident; or

   b. self-insured under any motor vehicle financial responsibility law, any motor carrier law, or any similar law; and

2. for which the total limits of insurance and self-insurance for bodily injury liability from all sources:

   a. are less than the amount of the *insured's* damages; or

   b. have been reduced by payments to *persons* other than *you* and *resident relatives* to less than the amount of the *insured's* damages.

*Underinsured Motor Vehicle* does not include a land motor vehicle:

1. whose ownership, maintenance, or use is provided Liability Coverage by this policy;

2. *owned by,* rented to, or furnished or available for the regular use of *you* or any *resident relative;*

3. designed for use primarily off public roads except while on public roads;

4. while located for use as a dwelling or other premises; or

5. defined as an *uninsured motor vehicle* under Uninsured Motor Vehicle Coverage of this policy.

23
9838A

## Insuring Agreement – Coverages W and W3

*We* will pay compensatory damages for *bodily injury* an *insured* is legally entitled to recover from the owner or driver of an *underinsured motor vehicle*. The *bodily injury* must be:

1. sustained by an *insured*; and

2. caused by an accident that involves the ownership, maintenance, or use of an *underinsured motor vehicle* as a motor vehicle.

*We* will pay only if the full amount of all available limits of all bodily injury liability bonds, policies, and self-insurance plans that apply to the *insured's bodily injury* have been used up by payment of judgments or settlements, or have been offered to the *insured* in writing.

The amount *we* will pay for damages is subject to the limitations of Title 75 of the Pennsylvania Consolidated Statutes.

## Consent to Settlement – Coverages W and W3

The *insured* must inform *us* of a settlement offer for the full amount of all available limits proposed by or on behalf of the owner or driver of the *underinsured motor vehicle*, and the *insured* must request *our* written consent to accept such settlement offer.

If *we*:

1. consent in writing, then the *insured* may accept such settlement offer.

2. inform the *insured* in writing that *we* do not consent, then the *insured* may not accept such settlement offer and:

   a. *we* will make payment to the *insured* in an amount equal to such settlement offer. This payment is considered a payment made by or on behalf of the owner or driver of the *underinsured motor vehicle*; and

   b. any recovery from or on behalf of the owner or driver of the *underinsured motor vehicle* shall first be used to repay *us*.

## Deciding Fault and Amount – Coverages W and W3

1. a. The *insured* and *we* must agree to the answers to the following two questions:

   (1) Is the *insured* legally entitled to recover compensatory damages from the owner or driver of the *underinsured motor vehicle*?

   (2) If the *insured* and *we* agree that the answer to 1.a.(1) above is yes, then what is the amount of the compensatory damages that the *insured* is legally entitled to recover from the owner or driver of the *underinsured motor vehicle*?

   b. If there is no agreement on the answer to either question in 1.a. above, then the *insured* shall:

   (1) file a lawsuit, in a state or federal court that has jurisdiction, against:

      (a) *us*;

      (b) the owner and driver of the *underinsured motor vehicle* unless *we* have consented to a settlement offer proposed by or on behalf of such owner or driver; and

      (c) any other party or parties who may be legally liable for the *insured's* damages;

   (2) consent to a jury trial if requested by *us*;

   (3) agree that *we* may contest the issues of liability and the amount of damages; and

   (4) secure a judgment in that action. The judgment must be the final result of an actual trial and any appeals, if any appeals are taken.

24
9838A

2. *We* are not bound by any:

a. judgment obtained without *our* written consent; and

b. default judgment against any *person* or organization other than *us*.

3. Regardless of the amount of any award, including any judgment or default judgment, *we* are not obligated to pay any amount in excess of the available limits under this coverage of this policy.

**Limits – Coverages W and W3**

1. The Underinsured Motor Vehicle Coverage limits are shown on the Declarations Page under "Underinsured Motor Vehicle Coverage – Bodily Injury Limits – Each Person, Each Accident".

a. The most *we* will pay for all damages resulting from *bodily injury* to any one *insured* injured in any one accident, including all damages sustained by other *insureds* as a result of that *bodily injury*, is the lesser of:

(1) the limit shown under "Each Person"; or

(2) the amount of all damages resulting from that *bodily injury* reduced by the sum of all payments for damages resulting from that *bodily injury* made by or on behalf of any *person* or organization who is or may be held legally liable for that *bodily injury*.

b. Subject to a. above, the most *we* will pay for all damages resulting from *bodily injury* to two or more *insureds* injured in the same accident is the limit shown under "Each Accident" reduced by the sum of all payments for *bodily injury* made to all *insureds* by or on behalf of any *person* or

organization who is or may be held legally liable for the *bodily injury*.

2. These Underinsured Motor Vehicle Coverage limits are the most *we* will pay regardless of the number of:

a. *insureds*;

b. claims made; or

c. *underinsured motor vehicles* involved in the accident.

**Limits – Coverage W3**

1. If there is more than one vehicle insured under this policy, the maximum limit of liability available is:

a. the limit applicable to the vehicle that was involved in the accident while *occupying your car*;

b. the limit applicable to the vehicle that was replaced while *occupying* a *newly acquired car* that replaces *your car*; or

c. the limit applicable to any one vehicle insured under this policy while injured as a *pedestrian* or injured while *occupying* a *newly acquired car* that does not replace *your car*, a *temporary substitute car*, or a *non-owned car*.

2. The limits of liability are not increased because more than one vehicle is insured under this policy.

**Nonduplication – Coverages W and W3**

*We* will not pay under Underinsured Motor Vehicle Coverage any damages that have already been paid to or for the *insured*:

1. by or on behalf of any *person* or organization who is or may be held legally liable for the *bodily injury* to the *insured*; or

2. for *bodily injury* under Liability Coverage of any policy issued by the *State Farm Companies* to *you* or any *resident relative*.

25
9838A

## Exclusions – Coverages W and W3

THERE IS NO COVERAGE:

1. FOR AN *INSURED* WHO, WITHOUT *OUR* WRITTEN CONSENT, SETTLES WITH ANY *PERSON* OR ORGANIZATION WHO MAY BE LIABLE FOR THE *BODILY INJURY*;

2. FOR PAIN, SUFFERING OR OTHER NONMONETARY DAMAGES SUSTAINED BY AN *INSURED* IF THE *BODILY INJURY* IS NOT A *SERIOUS INJURY* AND THE LIMITATION OF SECTION 1731(d)(2) OF TITLE 75 OF THE PENNSYLVANIA CONSOLIDATED STATUTES APPLIES;

3. FOR AN *INSURED* WHOSE *BODILY INJURY* RESULTS FROM THE DISCHARGE OF A FIREARM;

4. TO THE EXTENT IT BENEFITS:

   a. ANY WORKERS' COMPENSATION OR DISABILITY BENEFITS INSURANCE COMPANY;

   b. A SELF-INSURER UNDER ANY WORKERS' COMPENSATION LAW, DISABILITY BENEFITS LAW, OR SIMILAR LAW; OR

   c. ANY GOVERNMENT OR ANY OF ITS POLITICAL SUBDIVISIONS OR AGENCIES;

5. FOR PUNITIVE OR EXEMPLARY DAMAGES; OR

6. FOR ANY ORDER OF RESTITUTION ISSUED BY A COURT IN A CRIMINAL PROCEEDING OR EQUITABLE ACTION.

## Exclusions – Coverage W

THERE IS NO COVERAGE FOR AN *INSURED* WHO SUSTAINS *BODILY INJURY* WHILE *OCCUPYING* A MOTOR VEHICLE *OWNED BY THAT INSURED* IF THE VEHICLE IS NOT INSURED FOR UNDERINSURED MOTOR VEHICLE COVERAGE UNDER THIS POLICY OR ANY OTHER POLICY.

## Exclusions – Coverage W3

THERE IS NO COVERAGE FOR AN *INSURED* WHO SUSTAINS *BODILY INJURY* WHILE *OCCUPYING* A MOTOR VEHICLE *OWNED BY YOU* OR ANY *RESIDENT RELATIVE* IF IT IS NOT *YOUR CAR* OR A *NEWLY ACQUIRED CAR*.

This exclusion does not apply to the first *person* shown as a named insured on the Declarations Page and that named insured's spouse who resides primarily with that named insured, while *occupying* a motor vehicle not *owned by* one or both of them.

## If Other Underinsured Motor Vehicle Coverage Applies – Coverage W

1. If underinsured motor vehicle coverage for *bodily injury* is available to an *insured* from more than one policy provided by *us* or any other insurer, any coverage applicable:

   a. under this policy shall apply on a primary basis if the *insured* sustains *bodily injury* while not *occupying* a motor vehicle or trailer.

   b. to the vehicle covered under this policy which the *insured* was *occupying* when the *bodily injury* was sustained shall apply on a primary basis. Any other coverage provided by this policy shall apply on an excess basis.

   c. under this policy shall apply on an excess basis if the *insured* sustains *bodily injury* while *occupying* a vehicle other than *your car*.

2. Subject to item 1 above, if this policy and one or more other policies provide coverage for *bodily injury*:

   a. on a primary basis, *we* are liable only for our share. *Our* share is that percent of the damages payable on a primary basis that the limit of liability of this coverage bears to the total of all

26
9838A

applicable underinsured motor vehicle coverage on a primary basis.

b. on an excess basis, *we* are liable only for our share. *Our* share is that percent of the damages payable on an excess basis that the limit of liability of this coverage bears to the total of all applicable underinsured motor vehicle coverage provided on an excess basis.

### If Other Underinsured Motor Vehicle Coverage Applies – Coverage W3

1. If Underinsured Motor Vehicle Coverage provided by this policy and one or more other vehicle policies issued to *you* or any *resident relative* by one or more of the *State Farm Companies* apply to the same *bodily injury*, then:

   a. the Underinsured Motor Vehicle Coverage limits of such policies will not be added together to determine the most that may be paid; and

   b. the maximum amount that may be paid from all such policies combined is the single highest applicable limit provided by any one of the policies. *We* may choose one or more policies from which to make payment.

2. The Underinsured Motor Vehicle Coverage provided by this policy applies as primary coverage for an *insured* who sustains *bodily injury* while *occupying your car.*

   a. If:

      (1) this is the only vehicle policy issued to *you* or any *resident relative* by the *State Farm Companies* that provides Underinsured Motor Vehicle Coverage which applies to the accident as primary coverage; and

      (2) underinsured motor vehicle coverage provided by one or more sources other than the *State Farm Companies* also applies as primary coverage for the same accident,

then *we* will pay the proportion of damages payable as primary that *our* applicable limit bears to the sum of *our* applicable limit and the limits of all other underinsured motor vehicle coverage that apply as primary coverage.

   b. If:

      (1) more than one vehicle policy issued to *you* or any *resident relative* by the *State Farm Companies* provides Underinsured Motor Vehicle Coverage which applies to the accident as primary coverage; and

      (2) underinsured motor vehicle coverage provided by one or more sources other than the *State Farm Companies* also applies as primary coverage for the same accident,

then the *State Farm Companies* will pay the proportion of damages payable as primary that the maximum amount that may be paid by the *State Farm Companies* as determined in 1. above bears to the sum of such amount and the limits of all other underinsured motor vehicle coverage that apply as primary coverage.

3. Except as provided in 2. above, the Underinsured Motor Vehicle Coverage provided by this policy applies as excess coverage.

   a. If:

      (1) this is the only vehicle policy issued to *you* or any *resident relative* by the *State Farm Companies* that provides Underinsured Motor Vehicle Coverage which applies to the accident as excess coverage; and

      (2) underinsured motor vehicle coverage provided by one or more sources other than the *State Farm Companies* also applies as excess coverage for the same accident,

then *we* will pay the proportion of damages payable as excess that *our* applicable limit bears to the sum of *our* applicable limit and the limits of all other underinsured motor vehicle coverage that apply as excess coverage.

b. If:

   (1) more than one vehicle policy issued to *you* or any *resident relative* by the **State Farm Companies** provides Underinsured Motor Vehicle Coverage which applies to the accident as excess coverage; and

   (2) underinsured motor vehicle coverage provided by one or more sources other than the **State Farm Companies** also applies as excess coverage for the same accident,

then the **State Farm Companies** will pay the proportion of damages payable as excess that the maximum amount that may be paid by the **State Farm Companies** as determined in 1. above bears to the sum of such amount and the limits of all other underinsured motor vehicle coverage that apply as excess coverage.

**Our Payment Options – Coverages W and W3**

*We* may, at *our* option, make payment to one or more of the following:

1. The *insured*;

2. The *insured's* surviving spouse;

3. A parent or guardian of the *insured*, if the *insured* is a minor or an incompetent *person*; or

4. A *person* authorized by law to receive such payment.

## PHYSICAL DAMAGE COVERAGES

The physical damage coverages are Comprehensive Coverage, Collision Coverage, Emergency Road Service Coverage, and Car Rental and Travel Expenses Coverage.

This policy provides:

1. Comprehensive Coverage if "D";

2. Collision Coverage if "G";

3. Emergency Road Service Coverage if "H";

4. Car Rental and Travel Expenses Coverage if "R1"

to the vehicles for which the corresponding symbols and premiums are shown on the Declarations Page.

If a deductible applies to Comprehensive Coverage, then it is shown on the Declarations Page. The deductible that applies to Collision Coverage is shown on the Declarations Page.

**Additional Definitions**

*Covered Vehicle* means:

1. *your car*;

2. a *newly acquired car*;

3. a *temporary substitute car*;

4. a camper that is designed to be mounted on a pickup truck and shown on the Declarations Page;

5. a *non-owned car* while it is:

   a. being driven by an *insured*; or

   b. in the custody of an *insured* if at the time of the *loss* it is:

     (1) not being driven; or

     (2) being driven by a *person* other than an *insured* and being *occupied* by an *insured*; and

28
9838A

6. a *non-owned trailer* and a *non-owned camper* while it is being used by an *insured;*

including its parts and its equipment that are common to the use of the vehicle as a vehicle. However, parts and equipment of *trailers* and campers must be securely fixed as a permanent part of the *trailer* or camper.

*Daily rental charge* means the sum of:

1. the daily rental rate;

2. mileage charges; and

3. related taxes.

*Insured* means *you* and *resident relatives.*

*Loss* means:

1. direct, sudden, and accidental damage to; or

2. total or partial theft of

a *covered vehicle. Loss* does not include any reduction in the value of any *covered vehicle* after it has been repaired, as compared to its value before it was damaged.

*Loss Caused By Collision* means a *loss* caused by:

1. a *covered vehicle* hitting or being hit by another vehicle or other object; or

2. the overturning of a *covered vehicle.*

Any *loss* caused by missiles, falling objects, windstorm, hail, fire, explosion, earthquake, water, flood, total or partial theft, malicious mischief, vandalism, riot, civil commotion, or hitting or being hit by a bird or an animal is not a *Loss Caused By Collision.*

*Non-Owned Camper* means a camper designed to be mounted on a pickup truck that is in the lawful possession of an *insured* and that neither:

1. is *owned by:*

   a. an *insured;*

   b. any other *person* who resides primarily in *your* household; or

c. an employer of any *person* described in a. or b. above; nor

2. has been used by, rented by, or in the possession of an *insured* during any part of each of the 31 or more consecutive days immediately prior to the date of the *loss.*

*Non-Owned Trailer* means a *trailer* that is in the lawful possession of an *insured* and that neither:

1. is *owned by:*

   a. an *insured;*

   b. any other *person* who resides primarily in *your* household; or

   c. an employer of any *person* described in a. or b. above; nor

2. has been used by, rented by, or in the possession of an *insured* during any part of each of the 31 or more consecutive days immediately prior to the date of the *loss.*

**Insuring Agreements**

1. **Comprehensive Coverage**

   *We* will pay:

   a. for *loss*, except *loss caused by collision*, to a *covered vehicle;* and

   b. transportation expenses incurred by an *insured* as a result of the total theft of *your car* or a *newly acquired car.* These transportation expenses are payable:

      (1) during the period that:

         (a) starts on the date *you* report the theft to *us;* and

         (b) ends on the earliest of:

            (i) the date the vehicle is returned to *your* possession in a drivable condition;

            (ii) the date *we* offer to pay *you* for the *loss* if the vehicle has not yet been recovered; or

29
9838A

(iii) the date *we* offer to pay *you* for the *loss* if the vehicle is recovered, but is a total loss as determined by *us*; and

(2) during the period that:

(a) starts on the date the vehicle is left at a repair facility if the stolen vehicle is recovered, returned to *your* possession in a drivable condition, and has unrepaired damage that resulted from the total theft; and

(b) ends on the date the vehicle is repaired.

These transportation expenses must be reported to *us* before *we* will pay such incurred expenses.

**2. Collision Coverage**

*We* will pay for *loss caused by collision* to a *covered vehicle.*

**3. Emergency Road Service Coverage**

*We* will pay the fair cost incurred by an *insured* for:

a. up to one hour of labor to repair a *covered vehicle* at the place of its breakdown;

b. towing to the nearest repair facility where necessary repairs can be made if a *covered vehicle* is not drivable;

c. towing a *covered vehicle* out of a location where it is stuck if the vehicle is on or immediately next to a public road;

d. delivery of gas, oil, battery, or tire necessary to return a *covered vehicle* to driving condition. *We* do not pay the cost of the gas, oil, battery, or tire; and

e. up to one hour of labor for locksmith services to unlock a *covered vehicle* if its key is lost, stolen, or locked inside the vehicle.

**4. Car Rental and Travel Expenses Coverage**

a. **Car Rental Expense**

*We* will pay the *daily rental charge* incurred when *you* rent a *car* from a *car business* while *your car* or a *newly acquired car* is:

(1) not drivable; or

(2) being repaired

as a result of a *loss* which would be payable under Comprehensive Coverage or Collision Coverage.

*We* will pay the *daily rental charge* incurred during a period that:

(1) starts on the date:

(a) the vehicle is not drivable as a result of the *loss*; or

(b) the vehicle is left at a repair facility if the vehicle is drivable; and

(2) ends on the earliest of:

(a) the date the vehicle has been repaired or replaced;

(b) the date *we* offer to pay *you* for the *loss* if the vehicle is repairable but *you* choose to delay repairs; or

(c) five days after *we* offer to pay *you* for the *loss* if the vehicle is:

(i) a total loss as determined by *us*; or

(ii) stolen and not recovered.

The amount of any such *daily rental charge* incurred by *you* must be reported to *us* before *we* will pay such amount.

b. **Travel Expenses**

*We* will pay expenses for commercial transportation, lodging, and meals if *your car* or a *newly acquired car* is not

30
9838A

drivable as a result of a *loss* which would be payable under Comprehensive Coverage or Collision Coverage. The *loss* must occur more than 50 miles from *your* home. *We* will only pay these expenses if they are incurred by:

(1) an *insured* during the period that:

   (a) starts after the *loss* occurs; and

   (b) ends on the earlier of:

      (i) the *insured's* arrival at his or her destination or home if the vehicle is left behind for repairs; or

      (ii) the repair of the vehicle if the *insured* waits for repairs before continuing on to his or her destination or returning home; and

(2) *you*, or any *person you* choose, to travel to retrieve the vehicle and drive it to either the original destination or *your* home if the vehicle was left behind for repairs.

These expenses must be reported to *us* before *we* will pay such incurred expenses.

c. **Rental Car – Repayment of Deductible Expense**

*We* will pay the comprehensive deductible or collision deductible an *insured* is required to pay the owner of a car rented from a *car business*.

**Supplementary Payments – Comprehensive Coverage and Collision Coverage**

If Symbol "D" is shown on the Declarations Page and the corresponding *covered vehicle* sustains *loss* for which *we* make a payment under Comprehensive Coverage, or if Symbol "G" is shown on the Declarations Page and the corresponding *covered vehicle* sustains *loss* for which *we* make a payment under Collision Coverage, then *we* will pay reasonable expenses incurred to:

1. tow the *covered vehicle* immediately after the *loss*:

   a. for a reasonable distance from the location of the *loss* to any one repair facility chosen by an *insured* or the owner of the *covered vehicle*, if the *covered vehicle* is not drivable; or

   b. to any one repair facility or commercial storage facility, neither of which was chosen by an *insured* or the owner of the *covered vehicle*. *We* will also pay reasonable expenses incurred to tow the *covered vehicle* for a reasonable distance from this facility to any one repair facility chosen by an *insured* or the owner of the *covered vehicle*, if the *covered vehicle* is not drivable.

2. store the *covered vehicle*, if it is not drivable immediately after the *loss*, at:

   a. any one repair facility or commercial storage facility, neither of which was chosen by an *insured* or the owner of the *covered vehicle*; and

   b. any one repair facility chosen by the owner of the *covered vehicle*, and *we* determine such vehicle is a total loss.

   If the owner of the *covered vehicle* consents, then *we* may move the *covered vehicle* at *our* expense to reduce storage costs. If the owner of the *covered vehicle* does not consent, then *we* will pay only the storage costs that would have resulted if *we* had moved the damaged *covered vehicle*; and

3. clean up debris from the *covered vehicle* at the location of the *loss*. The most *we* will pay to clean up the debris is $250 for any one *loss*.

**Limits and Loss Settlement – Comprehensive Coverage and Collision Coverage**

1. *We* have the right to choose to settle with *you* or the owner of the *covered vehicle* in one of the following ways:

a. Pay the cost to repair the *covered vehicle* minus any applicable deductible.

(1) *We* have the right to choose one of the following to determine the cost to repair the *covered vehicle*:

(a) The cost agreed to by both the owner of the *covered vehicle* and *us*;

(b) A bid or repair estimate approved by *us*; or

(c) A repair estimate that is written based upon or adjusted to:

(i) the prevailing competitive price;

(ii) the lower of paintless dent repair pricing established by an agreement *we* have with a third party or the paintless dent repair price that is competitive in the market; or

(iii) a combination of (i) and (ii) above.

The prevailing competitive price means prices charged by a majority of the repair market in the area where the *covered vehicle* is to be repaired as determined by a survey made by *us*. If asked, *we* will identify some facilities that will perform the repairs at the prevailing competitive price. The estimate will include parts sufficient to restore the *covered vehicle* to its pre-loss condition.

*You* agree with *us* that the repair estimate may include new, used, recycled, and reconditioned parts. Any of these parts may be either original equipment manufacturer parts or non-original equipment manufacturer parts.

*You* also agree that replacement glass need not have any insignia, logo, trademark, etching, or other marking that was on the replaced glass.

(2) The cost to repair the *covered vehicle* does not include any reduction in the value of the *covered vehicle* after it has been repaired, as compared to its value before it was damaged.

(3) If the repair or replacement of a part results in betterment of that part, then *you* or the owner of the *covered vehicle* must pay for the amount of the betterment.

(4) If *you* and *we* agree, then windshield glass will be repaired instead of replaced.

b. Pay the actual cash value of the *covered vehicle* minus any applicable deductible.

(1) The owner of the *covered vehicle* and *we* must agree upon the actual cash value of the *covered vehicle*. If there is disagreement as to the actual cash value of the *covered vehicle*, then the disagreement will be resolved by appraisal upon written request of the owner or *us*, using the following procedures:

(a) The owner and *we* will each select a competent appraiser.

(b) The two appraisers will select a third competent appraiser. If they are unable to agree on a third appraiser within 30 days, then either the owner or *we* may petition a court that has jurisdiction to select the third appraiser.

(c) Each party will pay the cost of its own appraiser, attorneys, and expert witnesses, as well as any other expenses incurred

32
9838A

by that party. Both parties will share equally the cost of the third appraiser.

(d) The appraisers shall only determine the actual cash value of the *covered vehicle*. Appraisers shall have no authority to decide any questions of fact, decide any questions of law, or conduct appraisal on a class-wide or class-representative basis.

(e) A written appraisal that is both agreed upon by and signed by any two appraisers, and that also contains an explanation of how they arrived at their appraisal, will be binding on the owner of the *covered vehicle* and *us*.

(f) *We* do not waive any of *our* rights by submitting to an appraisal.

(2) The damaged *covered vehicle* must be given to *us* in exchange for *our* payment, unless *we* agree that the owner may keep it. If the owner keeps the *covered vehicle*, then *our* payment will be reduced by the value of the *covered vehicle* after the *loss*.

c. Return the stolen *covered vehicle* to its owner and pay, as described in 1.a. above, for any *direct*, sudden, and accidental damage that resulted from the theft.

2. The most *we* will pay for transportation expenses under Comprehensive Coverage is $25 per day subject to an aggregate limit of $750 per *loss*.

3. The most *we* will pay for *loss* to a *non-owned trailer* or a *non-owned camper* is $2,500.

## Limits – Car Rental and Travel Expenses Coverage

1. **Car Rental Expense**

   The limit for Car Rental Expense is shown on the Declarations Page under "Limit – Car Rental Expense – Each Day, Each Loss".

   a. The limit shown under "Each Day" is the most *we* will pay for the *daily rental charge*. If:

      (1) a dollar amount is shown, then *we* will pay the *daily rental charge* up to that dollar amount;

      (2) a percentage amount is shown, then *we* will pay that percentage of the *daily rental charge*.

   b. Subject to the "Each Day" limit, the limit shown under "Each Loss" is the most *we* will pay for Car Rental Expense incurred as a result of any one *loss*.

2. **Travel Expenses**

   The most *we* will pay for Travel Expenses incurred by all *insureds* as a result of any one *loss* is $500.

3. **Rental Car – Repayment of Deductible Expense**

   The most *we* will pay for Rental Car – Repayment of Deductible Expense incurred as a result of any one *loss* is $500.

## Nonduplication

*We* will not pay for any *loss* or expense under the Physical Damage Coverages for which the *insured* or owner of the *covered vehicle* has already received payment from, or on behalf of, a party who is legally liable for the *loss* or expense.

## Exclusions

THERE IS NO COVERAGE FOR:

1. ANY *COVERED VEHICLE* THAT IS:

a. INTENTIONALLY DAMAGED; OR

b. STOLEN

BY OR AT THE DIRECTION OF AN *INSURED*;

2. ANY *COVERED VEHICLE* WHILE IT IS RENTED TO OR LEASED TO OTHERS BY AN *INSURED*;

3. ANY *COVERED VEHICLE* WHILE IT IS USED TO CARRY *PERSONS* FOR A CHARGE. This exclusion does not apply to the use of a *private passenger car* on a share-the-expense basis;

4. ANY *COVERED VEHICLE* DUE TO:

a. THEFT;

b. CONVERSION;

c. EMBEZZLEMENT; OR

d. SECRETION

BY AN *INSURED*, A CONSIGNEE, AN AGENT OF A CONSIGNEE, OR A *PERSON* WHO OBTAINS POSSESSION OF THE *COVERED VEHICLE* WITH THE PERMISSION OF A CONSIGNEE OR AGENT OF A CONSIGNEE;

5. *LOSS* TO *YOUR CAR* OR A *NEWLY ACQUIRED CAR* IF AN *INSURED* VOLUNTARILY RELINQUISHES POSSESSION OF THAT *CAR* TO A *PERSON* OR ORGANIZATION UNDER AN ACTUAL OR PRESUMED SALES AGREEMENT;

6. ANY *COVERED VEHICLE* TO THE EXTENT *OUR* PAYMENT WOULD BENEFIT ANY CARRIER OR OTHER BAILEE FOR HIRE THAT IS LIABLE FOR *LOSS* TO SUCH *COVERED VEHICLE*;

7. *LOSS* TO ANY *COVERED VEHICLE* DUE TO *FUNGI*. THIS APPLIES REGARDLESS OF WHETHER OR NOT THE *FUNGI* RESULT FROM A *LOSS* THAT IS PAYABLE UNDER ANY OF THE PHYSICAL DAMAGE COVERAGES. *WE* WILL ALSO NOT PAY FOR ANY TESTING OR REMEDIATION OF *FUNGI*, OR ANY ADDITIONAL COSTS REQUIRED TO REPAIR ANY *COVERED VEHICLE* THAT ARE DUE TO THE EXISTENCE OF *FUNGI*;

8. *LOSS* TO ANY *COVERED VEHICLE* THAT RESULTS FROM:

a. NUCLEAR REACTION;

b. RADIATION OR RADIOACTIVE CONTAMINATION FROM ANY SOURCE; OR

c. THE ACCIDENTAL OR INTENTIONAL DETONATION OF, OR RELEASE OF RADIATION FROM, ANY NUCLEAR OR RADIOACTIVE DEVICE;

9. *LOSS* TO ANY *COVERED VEHICLE* THAT RESULTS FROM THE TAKING OF OR SEIZURE OF THAT *COVERED VEHICLE* BY ANY GOVERNMENTAL AUTHORITY;

10. *LOSS* TO ANY *COVERED VEHICLE* THAT RESULTS FROM WAR OF ANY KIND;

11. *YOUR CAR* WHILE SUBJECT TO ANY:

a. LIEN AGREEMENT;

b. RENTAL AGREEMENT;

c. LEASE AGREEMENT; OR

d. SALES AGREEMENT

NOT SHOWN ON THE DECLARATIONS PAGE;

12. ANY *NON-OWNED CAR* WHILE IT IS:

a. BEING MAINTAINED OR USED BY ANY *PERSON* WHILE THAT *PERSON* IS EMPLOYED IN OR ENGAGED IN ANY WAY IN A *CAR BUSINESS*; OR

b. USED IN ANY BUSINESS OR OCCUPATION OTHER THAN A *CAR BUSINESS*. This exclusion (12.b.) does not apply to a *private passenger car*;

34
9838A

13. ANY PART OR EQUIPMENT OF A *COVERED VEHICLE* IF THAT PART OR EQUIPMENT:

   a. FAILS OR IS DEFECTIVE; OR

   b. IS DAMAGED AS A DIRECT RESULT OF:

      (1) WEAR AND TEAR;

      (2) FREEZING; OR

      (3) MECHANICAL, ELECTRICAL, OR ELECTRONIC BREAKDOWN OR MALFUNCTION

     OF THAT PART OR EQUIPMENT.

This exclusion does not apply if the *loss* is the result of theft of the *covered vehicle*;

14. ANY PART OR EQUIPMENT:

   a. THAT IS NOT LEGAL FOR USE IN OR ON THE *COVERED VEHICLE* IN THE JURISDICTION WHERE THE *COVERED VEHICLE* IS REGISTERED; OR

   b. THE USE OF WHICH IS NOT LEGAL IN THE JURISDICTION WHERE THE *COVERED VEHICLE* IS REGISTERED BECAUSE OF HOW OR WHERE THAT PART OR EQUIPMENT IS INSTALLED IN OR ON THE *COVERED VEHICLE.*

However, if there is a legal version of the part or equipment that is necessary for the safe operation of the *covered vehicle*, then *we* will pay the cost that *we* would otherwise have paid to repair the vehicle with the legal version of the part or equipment. *We* will not pay any cost necessary to modify the vehicle for installation of the legal version of the part or equipment;

15. TIRES. This exclusion does not apply if:

   a. *loss* is caused by missiles, falling objects, windstorm, hail, fire, explosion, earthquake, water, flood, total or partial theft, malicious mischief, vandalism, riot, civil commotion, or hitting or being hit by a bird or an animal; or

   b. *loss caused by collision* to another part of the *covered vehicle* causes *loss* to tires;

16. REMOVABLE PRODUCTS USED FOR STORAGE OF AUDIO, VIDEO, OR OTHER DATA, INCLUDING BUT NOT LIMITED TO TAPES, DISCS, AND MEMORY CARDS, NOR IS THERE COVERAGE FOR THE RECONSTRUCTION OF DATA CONTAINED THEREIN;

17. ANY EQUIPMENT USED TO DETECT OR INTERFERE WITH SPEED MEASURING DEVICES;

18. A CAMPER, INCLUDING ITS PARTS AND ITS EQUIPMENT, THAT IS:

   a. DESIGNED TO BE MOUNTED ON A PICKUP TRUCK;

   b. *OWNED BY* AN *INSURED*; AND

   c. NOT SHOWN ON THE DECLARATIONS PAGE; OR

19. ANY *COVERED VEHICLE* WHILE IT IS:

   a. BEING PREPARED FOR, USED IN PRACTICE FOR, OR OPERATED IN ANY RACING CONTEST, SPEED CONTEST, HILL-CLIMBING CONTEST, JUMPING CONTEST, OR ANY SIMILAR CONTEST; OR

   b. ON A TRACK DESIGNED PRIMARILY FOR RACING OR HIGH SPEED DRIVING. This exclusion does not apply if the vehicle is being used in connection with an activity other than racing, high speed driving, or any type of competitive driving.

**If Other Physical Damage Coverage or Similar Coverage Applies**

1. If the same *loss* or expense is payable under more than one of the physical damage coverages provided by this policy, then only the one coverage that pays the most for that *loss* or expense applies.

2. If any of the physical damage coverages provided by this policy and one or more other policies issued to an *insured* by one or more of the *State Farm Companies* apply to the same *loss* or expense, then only one policy applies. *We* will select a policy that pays the most for the *loss* or expense.

3. The physical damage coverages provided by this policy apply as primary coverage for a *loss* to *your car*.

   If similar coverage provided by one or more sources other than the *State Farm Companies* also applies as primary coverage for the same *loss* or expense, then the *State Farm Companies* will pay the proportion of the *loss* or expense payable as primary that the maximum amount that may be paid by the *State Farm Companies* bears to the sum of such amount and the limits of all other similar coverage that applies as primary coverage.

4. Except as provided in 3. above, the physical damage coverages provided by this policy apply as excess coverage.

   If similar coverage provided by one or more sources other than the *State Farm Companies* also applies as excess coverage for the same *loss* or expense, then the *State Farm Companies* will pay the proportion of the *loss* or expense payable as excess that the maximum amount that may be paid by the *State Farm Companies* bears to the sum of such amount and the limits of all other similar coverage that applies as excess coverage.

## Financed Vehicle

1. If a creditor is shown on the Declarations Page, then any Comprehensive Coverage or Collision Coverage provided by this policy applies to that creditor's interest in *your car*. Coverage for the creditor's interest is only provided for a *loss* that is payable to *you*.

   However, if this policy is cancelled or non-renewed, then *we* will provide coverage for the creditor's interest until *we* notify the creditor of the termination of such coverage. This coverage for the creditor's interest is only provided for a *loss* that would have been payable to *you* if this policy had not been cancelled or nonrenewed. The date such termination is effective will be at least 10 days after the date *we* mail or electronically transmit a notice of the termination to the creditor. The mailing or electronic transmittal of the notice will be sufficient proof of notice.

2. If *we* pay such creditor, then *we* are entitled to the creditor's right of recovery against *you* to the extent of *our* payment. *Our* right of recovery does not impair the creditor's right to recover the full amount of its claim.

## Our Payment Options

1. **Comprehensive Coverage and Collision Coverage**

   a. *We* may, at *our* option, make payment to one or more of the following for *loss* to a *covered vehicle owned by you*:

      (1) *You*;

      (2) The repairer; or

      (3) A creditor shown on the Declarations Page, to the extent of its interest.

   b. *We* may, at *our* option, make payment to one or more of the following for *loss* to a *covered vehicle* not *owned by you*:

      (1) *You*;

      (2) The owner of such vehicle;

      (3) The repairer; or

      (4) A creditor, to the extent of its interest.

36
9838A

2. Emergency Road Service Coverage and Car Rental and Travel Expenses Coverage

*We* may, at *our* option, make payment to one or more of the following:

a. *You*;

b. The *insured* who incurred the expense; or

c. Any party that provided the service for which payment is owed.

## INSURED'S DUTIES

1. **Notice to Us of an Accident or Loss**

   The *insured* must give *us* or one of *our* agents notice of the accident or *loss* as soon as reasonably possible. The notice must give *us*:

   a. *your* name;

   b. the names and addresses of all *persons* involved in the accident or *loss*;

   c. the hour, date, place, and facts of the accident or *loss*; and

   d. the names and addresses of witnesses to the accident or *loss*.

2. **Notice to Us of a Claim or Lawsuit**

   a. If a claim is made against an *insured*, then that *insured* must immediately send *us* every demand, notice, and claim received.

   b. If a lawsuit is filed against an *insured*, then that *insured* must immediately send *us* every summons and legal process received.

3. **Insured's Duty to Cooperate With Us**

   a. The *insured* must cooperate with *us* and, when asked, assist *us* in:

      (1) making settlements;

      (2) securing and giving evidence; and

      (3) attending, and getting witnesses to attend, depositions, hearings, and trials.

   b. The *insured* must not, except at his or her own cost, voluntarily:

      (1) make any payment to others; or

      (2) assume any obligation to others

      unless authorized by the terms of this policy.

   c. Any *person* or organization making claim under this policy must, when *we* require, give *us* proof of loss on forms *we* furnish. This does not apply under the First Party Coverages if *we* fail to supply the forms within 10 days after receiving the notice of claim.

4. **Questioning Under Oath**

   Under:

   a. Liability Coverage, each *insured*;

   b. First Party Coverages, Uninsured Motor Vehicle Coverages, and Underinsured Motor Vehicle Coverages, each *insured*, or any other *person* or organization making claim or seeking payment; and

   c. Physical Damage Coverages, each *insured* or owner of a *covered vehicle*, or any other *person* or organization making claim or seeking payment;

   must, at *our* option, submit to an examination under oath, provide a statement under oath, or do both, as reasonably often as *we* require. Such *person* or organization must answer questions under oath, asked by

anyone's name, and sign copies of the answers. *We* may require each *person* or organization answering questions under oath to answer the questions with only that *person's* or organization's legal representative, *our* representatives, any *person* or *persons* designated by *us* to record the questions and answers, and no other *person* present.

5. **Other Duties Under the Physical Damage Coverages**

When there is a *loss, you* or the owner of the *covered vehicle* must:

a. protect the *covered vehicle* from additional damage. *We* will pay any reasonable expense incurred to do so that is reported to *us*;

b. make a prompt report to the police when the *loss* is the result of theft;

c. allow *us* to:

(1) inspect any damaged property before its repair or disposal;

(2) test any part or equipment before that part or equipment is removed or repaired; and

(3) move the *covered vehicle* at *our* expense in order to conduct such inspection or testing;

d. provide *us* all:

(1) records;

(2) receipts; and

(3) invoices

that *we* request and allow *us* to make copies; and.

e. not abandon the *covered vehicle* to *us*.

6. **Other Duties Under First Party Coverages, Uninsured Motor Vehicle Coverages, and Underinsured Motor Vehicle Coverages**

A *person* making claim under:

a. First Party Coverages, Uninsured Motor Vehicle Coverages, and Underinsured Motor Vehicle Coverages must notify *us* of the claim and give *us* all the details about the death, injury, treatment, and other information that *we* may need as soon as reasonably possible after the injured *insured* is first examined or treated for the injury. If the *insured* is unable to give *us* notice, then any other *person* may give *us* the required notice;

b. First Party Coverages must authorize *us* to obtain all medical bills, reports, and records. If the *person* is dead or unable to act, his or her legal representative shall give *us* the authorization;

c. Uninsured Motor Vehicle Coverages and Underinsured Motor Vehicle Coverages must:

(1) be examined as reasonably often as *we* may require by physicians chosen and paid by *us*. A copy of the report will be sent to the *person* upon written request;

(2) provide written authorization for *us* to obtain:

(a) medical bills;

(b) medical records;

(c) wage, salary, employment, tax, business, and financial information; and

(d) any other information *we* deem necessary to substantiate the claim.

If an injured *insured* is a minor, unable to act, or dead, then his or her legal representative must provide *us* with the written authorization.

If the holder of the information refuses to provide it to *us* despite the authorization, then at *our* request

38
9838A

the *person* making claim or his or her legal representative must obtain the information and promptly provide it to *us*; and

(3) allow *us* to inspect the vehicle that the *insured occupied* in the accident;

(4) send, *us* immediately a copy of all lawsuit papers if the *insured* files

a lawsuit against the party liable for the accident; and

d. Uninsured Motor Vehicle Coverages must report an accident, involving a motor vehicle whose owner and driver remain unknown, to the police as soon as practicable and to *us* within 30 days or as soon as practicable.

## GENERAL TERMS

### 1. When Coverage Applies

The coverages provided by this policy are shown on the Declarations Page and apply to accidents and *losses* that occur during the policy period. The policy period is shown on the Declarations Page and is for successive periods of six months each for which the renewal premium is paid. The policy period begins and ends at 12:01 AM Standard Time at the address shown on the Declarations Page.

### 2. Where Coverage Applies

The coverages provided by this policy are shown on the Declarations Page and apply to accidents and *losses* that occur:

a. in the United States of America and its territories and possessions;

b. in Canada; and

c. while a vehicle for which coverage is provided by this policy is being shipped between the ports of the United States of America, its territories, its possessions, and Canada.

### 3. Newly Owned or Newly Leased Car

If *you* want to insure a *car* newly *owned by you* with the *State Farm Companies* after that *car* ceases to be a *newly acquired car*, then *you* must either:

a. request *we* replace a *car* currently shown on the Declarations Page of this policy with the *car* newly *owned by you* and pay *us* any added amount due. If *you* make such request while this policy is in force and:

(1) before the *car* newly *owned by you* ceases to be a *newly acquired car*, then that *car* newly *owned by you* will be insured by this policy as *your car* beginning on the date the *car* newly *owned by you* is delivered to *you*. The added amount due will be calculated based on that date; or

(2) after the *car* newly *owned by you* ceases to be a *newly acquired car*, then that *car* newly *owned by you* will be insured by this policy as *your car* beginning on the date and time *you* make the request. The added amount due will be calculated based on that date; or

b. apply to the *State Farm Companies* for separate coverage to insure the *car* newly *owned by you*. Such coverage will be provided only if both the applicant and the vehicle are eligible for coverage at the time of the application.

39
9838A

**4. Changes to This Policy**

**a. Changes in Policy Provisions**

*We* may only change the provisions of this policy by:

(1) issuing a revised policy booklet, a revised Declarations Page, or an endorsement; or

(2) revising this policy to give broader coverage without an additional premium charge. If any coverage provided by this policy is changed to give broader coverage, then *we* will give *you* the broader coverage as of the date *we* make the change effective in the state of Pennsylvania without issuing a revised policy booklet, a revised Declarations Page, or an endorsement.

**b. Change of Interest**

(1) No change of interest in this policy is effective unless *we* consent in writing.

(2) Except under Death, Dismemberment and Loss of Sight Coverage, if a named insured dies, then the definition of *insured* under each of the coverages provided by this policy is changed to include:

(a) any *person* with lawful custody of *your car*, a *newly acquired car*, or a *temporary substitute car* until a legal representative is qualified; and then

(b) the legal representative of the deceased named insured.

This only applies while such *person* is maintaining or using *your car*, a *newly acquired car*, or a *temporary substitute car.*

Policy notice requirements are met by mailing the notice to the deceased named insured's last known address.

**c. Joint and Individual Interests**

If *you* consists of more than one *person* or entity, then each acts for all to change or cancel the policy.

**5. Premium**

a. Unless as otherwise provided by an alternative payment plan in effect with the *State Farm Companies* with respect to the premium for this policy, the premium is due and payable in full on or before the first day of the policy period shown on the most recently issued Declarations Page or Renewal Notice.

b. The renewal premium for this policy will be based upon the rates in effect, the coverages carried, the applicable limits, deductibles, and other elements that affect the premium that apply at the time of renewal.

c. The premium for this policy may vary based upon the purchase of other insurance from the *State Farm Companies.*

d. The premium for this policy is based upon information *we* have received from *you* or other sources. *You* must inform *us* if any information regarding the following is incorrect or incomplete, or changes during the policy period, and *you* must answer questions *we* ask regarding the following:

(1) *Your car*, or its use, including annual mileage;

(2) The *persons* who regularly drive *your car*, including newly licensed family members;

(3) *Your* marital status; or

(4) The location where *your car* is primarily garaged.

If the above information or any other information used to determine the premium is incorrect, incomplete,

40
9838A

changes during the policy period, or is not provided to *us* when *we* ask, then *we* may decrease or increase the premium during the policy period. If *we* decrease the premium during the policy period, then *we* will provide a refund or a credit in the amount of the decrease. If *we* increase the premium during the policy period, then *you* must pay the amount of the increase.

## 6. Renewal

*We* agree to renew this policy for the next policy period upon payment of the renewal premium when due, unless *we* mail or deliver a nonrenewal notice or a cancellation notice as set forth in 7. and 8. below.

## 7. Nonrenewal

If *we* decide not to renew this policy:

a. because a named insured's driver's license or motor vehicle registration has been under suspension or revocation during the policy period, then at least 15 days before the end of the current policy period; or

b. for any other reason, then at least 60 days before the end of the current policy period

*we* will mail or deliver a nonrenewal notice to the most recent address provided to *us* by *you* as the policy address. The mailing of the notice will be sufficient proof of notice.

## 8. Cancellation

### a. How You May Cancel

*You* may cancel this policy by providing to *us* advance notice of the date cancellation is effective. *We* may confirm the cancellation in writing.

### b. How and When We May Cancel

*We* may cancel this policy by mailing or delivering a written notice to the most recent address provided to *us* by *you* as the policy address. The notice

will provide the date cancellation is effective.

The mailing of the notice will be sufficient proof of notice.

(1) If *we* mail or deliver a cancellation notice:

    (a) during the first 59 days following this policy's effective date; or

    (b) because the premium is not paid when due or a named insured's driver's license or motor vehicle registration has been under suspension or revocation during the policy period

then the date cancellation is effective will be at least 15 days after the date *we* mail or deliver the cancellation notice.

(2) If *we* mail or deliver a cancellation notice after this policy has been in force for more than 59 days and because the insured has misrepresented or concealed facts material to *our* acceptance of the risk, then the date cancellation is effective will be at least 60 days after the date *we* mail or deliver the cancellation notice.

(3) After this policy has been in force for more than 59 days, *we* will not cancel this policy before the end of the current policy period unless:

    (a) the premium is not paid when due;

    (b) a named insured has had his or her driver's license or motor vehicle registration under suspension or revocation during the policy period. If *we* cancel this policy solely because a named insured's driver's license was suspended or revoked due to such named

41
9838A

insured's failure to respond to a citation, *we* will reinstate this policy to provide continuous coverage if *you* furnish to *us*, before the cancellation effective date, proof that such named insured has:

(i) responded to all citations; and

(ii) paid all fines and penalties in connection with them; or

(c) the insured has misrepresented or concealed facts material to *our* acceptance of the risk.

### c. Return of Unearned Premium

If *you* cancel this policy, then premium may be earned on a short rate basis. If *we* cancel this policy, then premium will be earned on a pro rata basis.

Any unearned premium will be returned at the time of cancellation or within:

(1) 30 days after *we* cancel this policy; or

(2) a reasonable time after cancellation if *you* cancel this policy.

Delay in the return of any unearned premium does not affect the cancellation date.

### 9. Assignment

No assignment of benefits or other transfer of rights is binding upon *us* unless approved by *us*.

### 10. Bankruptcy or Insolvency of the Insured

Bankruptcy or insolvency of the *insured* or his or her estate will not relieve *us* of *our* obligations under this policy.

### 11. Concealment or Fraud

There is no coverage under this policy if *you* or any other *person* insured under this policy has made false statements with the intent to conceal or misrepresent any material fact or circumstance in connection with any claim under this policy.

### 12. Our Right to Recover Our Payments

Death, Dismemberment and Loss of Sight Coverage payments are not recoverable by *us*. Under all other coverages the following apply:

**a. Subrogation**

If *we* are obligated under this policy to make payment to or for a *person* or organization who has a legal right to collect from another *person* or organization, then *we* will be subrogated to that right to the extent of *our* payment.

The *person* or organization to or for whom *we* make payment must help *us* recover *our* payments by:

(1) doing nothing to impair that legal right;

(2) executing any documents *we* may need to assert that legal right; and

(3) taking legal action through *our* representatives when *we* ask.

**b. Reimbursement**

If *we* make payment under this policy and the *person* or organization to or for whom *we* make payment recovers or has recovered from another *person* or organization, then the *person* or organization to or for whom *we* make payment must:

(1) hold in trust for *us* the proceeds of any recovery; and

(2) reimburse *us* to the extent of *our* payment.

### 13. Legal Action Against Us

Legal action may not be brought against *us* until there has been full compliance with all the provisions of this policy. In addition, legal action may only be brought against *us* regarding:

42
9838A

a.  Liability Coverage after the amount of damages an *insured* is legally liable to pay has been finally determined by:

(1) judgment after an actual trial, and any appeals of that judgment if any appeals are taken; or

(2) agreement between the claimant and *us*.

b.  Uninsured Motor Vehicle Coverages and Underinsured Motor Vehicle Coverages if the *insured* or that *insured's* legal representative within two years immediately following the date of the accident:

(1) presents either an Uninsured Motor Vehicle Coverage claim or an Underinsured Motor Vehicle Coverage claim to *us*; and

(2) files a lawsuit in accordance with the **Deciding Fault and Amount** provision of the involved coverage.

Except as provided in c.(2) above, no other legal action may be brought against *us* relating to Uninsured Motor Vehicle Coverages or Underinsured Motor Vehicle Coverages for any other causes of action that arise out of or are related to these coverages until there has been full compliance with the provisions titled **Consent to Settlement** and **Deciding Fault and Amount**.

c.  Physical Damage Coverages if the legal action relating to these coverages is brought against *us* within one year immediately following the date of the accident or *loss*.

**14. Choice of Law**

Without regard to choice of law rules, the law of the state of:

a.  Pennsylvania will control, except as provided in b. below, in the event of any disagreement as to the interpretation and application of any provision in this policy; and

b.  Illinois will control in the event of any disagreement as to the interpretation and application of this policy's:

(1) Mutual Conditions provision found on the most recently issued Declarations Page, if this policy was issued by the State Farm Mutual Automobile Insurance Company; or

(2) Participating Policy provision found on the most recently issued Declarations Page, if this policy was issued by any subsidiary or affiliate of the State Farm Mutual Automobile Insurance Company.

**15. Severability**

If any provision of this policy is held invalid or unenforceable by a court that has jurisdiction, then:

a.  such provision will remain in full force to the extent not held invalid or unenforceable; and

b.  all other provisions of this policy will remain valid and enforceable.

43
9838A

Policy Form 9838A



US Steel Tower • 10th Floor
600 Grant Street
Pittsburgh, PA 15219-2705

Toll Free:   1-800-943-3427
Fax:          412-391-2180
Web:         EdgarSnyder.com

**Attorney Brad D. Trust**
Also admitted to practice in West Virginia

Direct Dial Number: 412-394-5481
Department Fax: 412-391-1830
E-mail: btrust@edgarsnyder.com

February 25, 2018

Prothonotary of Cambria County
Cambria County Courthouse
200 S. Center Street
Ebensburg, PA  15931

Re:   Jennifer Petak v. State Farm Mutual Automobile Insurance Company
       In the Court of Common Pleas of Cambria County, Pennsylvania
       Our File No. 555255

Dear Sir or Madam:

        Enclosed, please find the following relative to the above:

        1.      The original and one (1) copy of a Complaint in a Civil Action along with
                an extra cover sheet.
        2.      Check payable to you in the amount of $103.25.
        3.      One (1) return envelope.

        I would appreciate it very much if you would file the original Complaint, indicate the
docket number and filing date on the copy.  Then, please return the copy along with the extra cover
sheet, time stamped and docketed along with the receipt for the filing fee to this office in the return
envelope so that I may serve the out-of-state defendant.

        If there is anything further you need in order to file this matter, please call me and I will
be happy to provide it to you.  Thank you for your anticipated attention to this matter.

                                        Very truly yours,

                                        Brad D. Trust

BDT/las
Enclosures

#8381398